## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| JOHN PENROD, GUS ERPENBACH, and JUAN WELSH, individually and on behalf of themselves and all others similarly situated, | Case No.: 0:18-cv-2907 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| | **DEMAND FOR JURY TRIAL** |
| v. | |
| K&N ENGINEERING, INC. | |
| Defendant. | |

Plaintiffs John Penrod, Gus Erpenbach, and Juan Welsh bring this action against Defendant K&N Engineering, Inc. (herein "K&N" or "Defendant"), by and through their attorneys, individually and on behalf of all others similarly situated, and allege as follows:

### INTRODUCTION

1.     This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of current and former purchasers of engine oil filters used for motorcycles and power sport vehicles, which were designed, manufactured, marketed, and sold to consumers across the United States by K&N.

2.     Specifically, the oil filters at issue bear K&N model numbers KN138, KN204, and KN303 (collectively, the "Oil Filters").

3.     This action arises from Defendant's failure to disclose to Plaintiffs and similarly situated consumers that the Oil Filters contain a structural and manufacturing defect whereby they can suddenly separate or fracture causing pressurized and hot

1

engine oil to erupt and spill onto the person, engine, components, tires, and riding surfaces (the "Separation Defect"). This eruption results in possible engine fires, engine failures, vehicle crashes, personal injuries, and other economic damages.

4.      Defendant marketed the Oil Filters to consumers as being highly dependable and capable of withstanding "extreme conditions"[1] despite its knowledge that the Oil Filters would fail without warning and during normal use.

5.      As a result of Defendant's unfair and deceptive business practices, consumers, including Plaintiffs, have been placed in jeopardy of physical harm and suffered an ascertainable loss of money, property, and loss in value in the Oil Filters themselves.

6.      Had Plaintiffs and other Class Members known of the defect within the Oil Filters at the time of purchase, they would not have purchased the Oil Filters, or would have paid substantially less for them.

7.      Accordingly, Plaintiffs bring this action to redress Defendant's violations of the Minnesota, Missouri, and Oregon consumer fraud statutes, and also seek recovery for negligence, strict liability, breach of express warranty, breach of implied warranty, and breach of the duty of good faith and fair dealing.

_____

[1] https://www.knfilters.com/search/product.aspx?prod=KN-138 (last visited Oct. 9, 2018); https://www.knfilters.com/search/product.aspx?prod=kn-204 (last visited Oct. 9, 2018); https://www.knfilters.com/search/product.aspx?prod=KN-303 (last visited Oct. 9, 2018).

## JURISDICTION AND VENUE

8.     This Court has diversity jurisdiction over this action under 28 U.S.C.

§ 1332(a) and (d) because (1) there are more than 100 class members; (2) the amount in

controversy for the Class exceeds $5,000,000, exclusive of interests and costs; and (3)

and Plaintiff and other putative class members are citizens of a different states than

Defendant.

9.     This Court has personal jurisdiction over Defendant because Defendant

conducted and continues to conduct substantial business in the District, including

purposely availing itself of the privileges and benefits of doing business in the District,

including both directly and through agents and franchisees, marketing and distributing

its products within the District.

10.     Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1391(a)

because Defendant transacts business in this District and because a substantial part of

the events, acts and omissions giving rise to these claims occurred in the District of

Minnesota.

## PARTIES

**A.     Plaintiff John Penrod**

11.     Plaintiff John Penrod is a citizen of the State of Minnesota, and currently

resides in Hennepin County.

12.     In approximately June 2017, Plaintiff Penrod paid Heinen's Motorsports in

Osseo, Minnesota to install a model 204 K&N oil filter on his 2007 Honda Interceptor

motorcycle during routine maintenance.

13.     In July 2017, Plaintiff was operating his motorcycle on the highway when he felt the motorcycle's performance suddenly decline. Upon pulling over, he observed that the oil filter had failed and that engine oil was covering his rear tire and spilling everywhere.

14.     Immediately thereafter, Plaintiff contacted Defendant directly about the failure of the oil filter. Defendant offered Plaintiff $300 to compensate Plaintiff for the cost of an oil change and tire, which Plaintiff declined.

15.     Plaintiff Penrod utilized the 204 K&N oil filter for its intended purpose and ordinary use, including the proper installation of such on his motorcycle.

16.     Plaintiff Penrod has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the safety, construction and durability of the oil filter, including but not limited to, the damages recounted above and other consequential damages.

17.     Neither Defendant, nor any of its agents, sellers, or other representatives informed Plaintiff Penrod of the existence of the defect prior to, or any time after, his purchase.

**B.     Plaintiff Gus Erpenbach**

18.     Plaintiff Gus Erpenbach is a citizen of the state of Missouri and currently resides in St. Louis County.

19.     On April 9, 2017, Plaintiff purchased a model 204 K&N oil filter from Walmart's website and picked it up at the Wal-Mart located in Bridgeton, Missouri.

Plaintiff conducted research prior to purchase and purchased the K&N oil filter in part because of the positive reputation of K&N.

20.     On April 21, 2018, Plaintiff was operating his 2005 Honda CBR 600rr motorcycle on the highway when he felt the motorcycle's performance suddenly decline and reduced traction from the rear tire. Upon pulling over, he observed that the oil filter had failed and engine oil was covering his rear tire and spilling everywhere.

21.     To mitigate the damage to his motorcycle, Plaintiff was forced to purchase cleaner and towels to remove the oil from his motorcycle. Plaintiff also purchased products to clean and lubricate the motorcycle chain, purchased a new filter and quarts of oil, and performed an engine oil change.

22.     Plaintiff attempted to contact K&N by telephone on multiple occasions thereafter, but no K&N representatives answered his calls.  Additionally, there was no option for Plaintiff to leave a message during any of these calls.

23.     Plaintiff Erpenbach utilized the 204 K&N oil filter for its intended purpose and ordinary use, including the proper installation of such on his motorcycle.

24.     Plaintiff Erpenbach has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the safety, construction and durability of the oil filter, including but not limited to, the damages recounted above and other consequential damages.

25.     Neither Defendant, nor any of its agents, sellers, or other representatives informed Plaintiff Erpenbach of the existence of the defect prior to, or any time after,

his purchase.

**C.     Plaintiff Juan Welsh**

26.     Plaintiff Juan Welsh is a citizen of the state of Oregon and currently resides in Lane County, Oregon.

27.     In approximately June 2017, Plaintiff purchased a model 204 K&N oil filter at Cycle Parts located in Eugene, Oregon and also paid for Cycle Parts to install the oil filter onto Plaintiff's 2015 Triumph Bonneville motorcycle.

28.     On July 10, 2018, Plaintiff was on a long road trip and traveling through a remote location in Idaho when Plaintiff observed the oil filter explode while operating his motorcycle on the highway. Plaintiff pulled over and observed engine oil completely covering his back tire. Plaintiff called a tow truck and was towed to a motorcycle repair shop in Boise, Idaho, who informed Plaintiff that the shop had seen many failures of model 204 K&N oil filters. As a result of the filter failure, Plaintiff's engine catastrophically failed and required replacement at a cost of approximately $10,000.

29.     Plaintiff Welsh utilized the 204 K&N oil filter for its intended purpose and ordinary use, including the proper installation of such on his motorcycle.

30.     Plaintiff Welsh has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the safety, construction, and durability of the oil filter, including but not limited to, the damages recounted above and other consequential damages.

31.     Neither Defendant, nor any of its agents, sellers, or other representatives informed Plaintiff Welsh of the existence of the defect prior to, or any time after, his purchase.

**D.     Defendant K&N Engineering, Inc.**

32.     Defendant designs, manufactures, markets, distributes, and/or sells oil filters, air filters, and other products designed for cars, trucks, motorcycles, engines, and other industrial applications.

33.     Defendant is incorporated under the laws of California and its principal place of business is located at 1455 Citrus Street, Riverside, California 92502 where it owns and operates a complex of 10 buildings comprising nearly 400,000 square feet. Additionally, K&N has operations in the United Kingdom and the Netherlands.

34.     K&N was founded in 1964 and initially began selling motorcycles and motorcycle parts. Since its founding, K&N has grown substantially and now manufactures over 5,000 different parts for various makes and models of cars, trucks, SUVs, motorcycles, ATVs, and more.[2] Defendant K&N's products are sold through its own website, national auto part suppliers, as well as specialty retailers.[3]

35.     In or around December 2011, Defendant K&N was acquired by Gryphon

_____

[2] *See* http://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=4470261 (last visited September 24, 2018); https://www.knfilters.com/knhistory.htm (last visited September 24, 2018).
[3] http://www.gryphon-inv.com/news-article/gryphon-investors-acquires-majority-stake-in-kn-engineering/ (last visited October 1, 2018).

Investors ("Gryphon"), a leading middle market private equity firm based in San Francisco.[4]

36.    In or around September 2016, The Goldman Sachs Group, Inc. ("Goldman Sachs") then acquired Defendant K&N for $24,475,000.[5]

37.    Defendant distributes its products through brick-and-mortar and online retailers, and engages in continuous and substantial business in Minnesota.

38.    Defendant's mission statement is to "[s]eek out and dominate traditional, modern and yet undiscovered markets for high performance, high quality, long life filtration and air management products. Support these markets with an unsurpassed positive experience from the point of first impression throughout the customer life."[6]

## TOLLING OF STATUTES OF LIMITATIONS

39.    Any applicable statute(s) of limitations have been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and the members of the Class could not have reasonably discovered the true, latent nature of the Separation Defect until shortly before this class action litigation was commenced.

40.    Defendant was, and remains, under a continuing duty to disclose to Plaintiffs

---

[4] http://www.gryphon-inv.com/news-article/gryphon-investors-acquires-majority-stake-in-kn-engineering/ (last visited October 1, 2018).
[5] https://www.ftc.gov/enforcement/premerger-notification-program/early-termination-notices/20161807 (last visited October 1, 2018);
https://www.newvaluecapital.com/knengineering/ (last visited October 1, 2018);
https://www.sec.gov/Archives/edgar/data/1688787/000095010316017572/xslFormDX01/primary_doc.xml (last visited October 1, 2018).
[6] https://www.knfilters.com/knhistory.htm (last visited September 24, 2018).

8

and the members of the Class the true character, quality, and nature of the Oil Filters because of its knowledge of the defective nature of the Oil Filters, including that the design and/or manufacturing defects inherent in the Oil Filters pose grave and immediate danger to those that use them for their intended purpose.

41.     As a result of the active concealment by Defendant, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

42.     Similar to automobile engines, motorcycles and power sport vehicles contain internal combustion engines. Combustion engines use pistons to convert pressure into a rotating motion, which powers the engine. To generate this rotation motion, a vaporized fuel mixture is pulled into the combustion chamber of the engine. Depending on the type of engine, a two-sequence or a four-sequence cycle is used to power the engine (the "Combustion Cycle"). In a four-stroke sequence, first, the intake stroke begins with the inlet valve opening and a vaporized fuel mixture is pulled into the combustion chamber. Second, the compression stroke begins with the inlet valve closing and the piston beginning its movement upward, compressing the fuel mixture in the combustion chamber. Third, the power stroke begins when the spark plug ignites the fuel mixture, expanding the gases and generating power that is transmitted to the crankshaft. And fourth, the exhaust stroke begins with the exhaust valve opening and the piston moving back up, forcing the exhaust gases out of the cylinder. The exhaust valve then closes, the inlet valve opens, and the Combustion Cycle repeats itself. A diagram of Combustion Cycle is below:



43.     For two stroke engines, the pistons only engage in the intake stroke and exhaust stroke steps. As a result, all air, fuel and combustion products are moved in and out of the engine during these two strokes.

44.     When combustion engines are in operation, engine oil is used to lubricate the piston, cylinder wall, connecting rod bearings, and other rotating and moving components as the piston moves up and down through the two- or four-stroke sequence. Engine oil is necessary to reduce wear on moving parts throughout the engine, improve sealing, and cool the engine by carrying away heat from the moving parts. Engine oil also cleans and transports contaminants away from the engine to the engine oil filter. Oil is pumped and pressurized throughout the engine by the oil pump. The oil pump draws oil from the oil pan, located underneath the pistons and crankshaft. The oil pump forces engine oil through the oil filter and then through passages in the engine to properly lubricate and reduce friction in internal moving engine components. The oil

then returns to the oil pan through small drainage holes located throughout the engine where it will be recirculated by the oil pump.

45.     Typically, on motorcycles, oil filters are located directly in front of the rear tire. Because of the placement, an oil filter failure can result in an immediate loss of traction to the rear tire and cause a serious accident.

46.     Defendant was aware of the placement of the Oil Filters on the respective motorcycles when it designed, manufactured and distributed the Oil Filters.

47.     Defendant represents that its Oil Filters "contain a modern synthetic filter media, designed for ultimate flow with less pressure drop, yet engineered for outstanding filtration[,]" and that the Oil Filters "provide outstanding filtration levels and a high oil flow rate."[7]

48.     Likewise, Defendant claims that its Oil Filters "are able to handle heavy duty applications"; function well with all types of oils; and "will add increased performance to your motorcycle or ATV."[8]

49.     Defendant further advertises that its Oil Filters are premium products "built to withstand the high demands of racing conditions." Specifically, Defendant markets its Oil Filters as being "engineered for outstanding filtration" and "able to handle heavy duty applications[.]"[9]

50.     Defendant specifically warrants that its Oil Filters will be free from defects in

---

[7] https://www.knfilters.com/oil_filters.aspx (last visited September 24, 2018).
[8] *Id.*
[9] *Id.*

materials and workmanship during recommended service intervals or it will replace the Oil Filters free of charge.[10]

51.     Defendant further warrants that if a defective Oil Filter causes "engine or equipment failure," then Defendant will repair the damaged engine or equipment. If a full synthetic or other premium lubricant is used, Defendant will extend this coverage to the interval specified by the lubricant supplier.[11]

52.     Contrary to Defendant's representations and warranties, its Oil Filters contain a structural and manufacturing defect whereby they can suddenly separate or fracture causing pressurized engine oil to erupt and spill onto the engine, components, tires, and riding surface.

53.     Defendant has long known, since at least 2014, that the Oil Filters are defective through (1) its own records of customer complaints and settlement payments, (2) retailer records and communications, (3) warranty and post-warranty claims, (4) pre-sale durability testing, (5) online forums complaining of the issue, and (6) other various sources.

54.     Specifically, purchasers of Oil Filters with model number KN138 have complained about it "bl[owing] oil everywhere, smok[ing] the tire" [12] and it "popp[ing]

---

[10] *Id.*
[11] *Id.*
[12] Christopher W., Verified Purchase Review: It is a crap part and yes it was tight, AMAZON (May 31, 2015), https://www.amazon.com/gp/customer-reviews/R20GAIJWAFD763/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B000E2CVDI (rating a 1.0 out of 5 stars) (last visited September 24, 2018).

out . . . along the union" causing oil to "gush[] everywhere[.]"[13]

55.     In another instance, the KN138 Oil Filter "detached from the case, even [with] it . . . safety wired[,]" "spray[ing] oil everywhere" resulting in the driver *crashing*, losing consciousness, and suffering "commotive head trauma, [a] broken right wirst [sic], [and a] deep wound on left arm."[14]

56.     Purchasers of the KN204 Oil Filter have levied similar complaints, alleging that the lug nut "separate[s] from the filter" "caus[ing] [o]il to spray[,]"[15] noting that "the oil filter cannot withstand 'hard riding' (excess of 120+mph) longer than a half hour without bursting[,]"[16] and "the welded-on nut blew" causing "oil [to go] everywhere."[17] Likewise, one consumer described this oil filter as being "[p]rone to

---

[13] Vehicle 1, Oil Filter Issues, APRILIA FORUM (July 11, 2014), http://www.apriliaforum.com/forums/showthread.php?294161-Oil-Filter-Issues&highlight=k%26amp%3Bn+oil+filter (attaching photographs of oil filter with and without damage) (last visited September 24, 2018).

[14] a-f, Thread Reply to Oil Filter Issues, APRILIA FORUM (July 12, 2015), http://www.apriliaforum.com/forums/showthread.php?294161-Oil-Filter-Issues/page2&highlight=k%26amp%3Bn+oil+filter (last visited September 24, 2018).

[15] Davidson, Verified Purchase Review: BUYER BEWARE!!!!! MOTOR FAILURE, AMAZON (May 31, 2017), https://www.amazon.com/gp/customer-reviews/R2DJ272PG3SZ67/ref=cm_cr_arp_d_rvw_ttl?ie=UTF8&ASIN=B000E2CVI8 (rating 1.0 out of 5 stars) (last visited September 24, 2018).

[16] Ryan Williams, Verified Purchase Review: Purchase your oil filter from a different manufacturer, AMAZON (Dec. 6, 2016), https://www.amazon.com/gp/customer-reviews/RGU5NLD39QDNU/ref=cm_cr_arp_d_rvw_ttl?ie=UTF8&ASIN=B000E2CVI8 (rating 1.0 out of 5 stars) (last visited September 24, 2018).

[17] *See, e.g.*, Kate, Verified Purchase Review: I was on the way to the mountains on my …, AMAZON (Apr. 30, 2017), https://www.amazon.com/gp/customer-reviews/R2R54G3XULV48Z/ref=cm_cr_arp_d_rvw_ttl?ie=UTF8&ASIN=B000E2CVI8 (rating 1.0 out of 5 stars and attaching photographs of blown welded-on nut and resulting oil) (last visited September 24, 2018).

catastrophic blow outs."[18]

57.     In addition, there are numerous YouTube videos published by consumers documenting their experience with the defect in great detail, including close ups of the fractured oil filters along with narratives of the catastrophic failures.[19]

58.     Because of safety concerns for its riders, the Chuckwalla Valley Motorcycle Association (CVMA) has "bann[ed] the use of aftermarket oil filters during its 2016-2017 race series[,]" which includes K&N's products.[20]

59.     One consumer who purchased a model number KN303 Oil Filter described his experience, alleging that "the oil filter burst at the seam and started spewing my oil

---

[18] Jacob Con, Verified Purchase Review: Prone to catastrophic blow outs, AMAZON (Nov. 18, 2016), https://www.amazon.com/gp/customer-reviews/R3IB79T5N1U0XJ/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B000E2CVI8 (rating 1.0 out of 5 stars) (last visited September 24, 2018).

[19] See https://www.youtube.com/watch?v=83bZYmDyZEs https://www.youtube.com/watch?v=TKpY2xJOlms; https://www.youtube.com/watch?v=0iBsBqL9gxo; https://www.youtube.com/watch?v=THJjp29UFUk; https://www.youtube.com/watch?v=K_ez5PxlOxU; https://www.youtube.com/watch?v=GAoyncDzLTE;https://www.youtube.com/watch?v=wVysFczMjs8; https://www.youtube.com/watch?v=Jo24n8tywNE;https://www.youtube.com/watch?v=o8gNrW0Q0xo;https://www.youtube.com/watch?v=YNZP1l68t94l; https://www.youtube.com/watch?v=mL2NwLtrghc; https://www.youtube.com/watch?v=d6oBxfTM_IU;https://www.youtube.com/watch?v=L7A0vVEKUFI;https://www.youtube.com/watch?v=kwqIasdWCv8; https://www.youtube.com/watch?v=rAeuDqya7pc; and https://www.youtube.com/watch?v=D6iM4uF48Xo (all links last visited Sept. 28, 2018);

[20] CVMA Banning All Aftermarket Oil Filters, ROADRACINGWORLD (April 12, 2016), http://www.roadracingworld.com/news/cvma-banning-all-aftermarket-oil-filters/ (last visited September 24, 2018).

all over the ground" and "rear tire[,]"[21] while another claimed that a "[b]lown [g]asket"

resulted in his "bike [being] covered in oil[.]"[22]

60.    Purchasers of the KN303 Oil Filter have claimed that a change in where the

oil filter is manufactured, from the U.S. to China, has caused the overall quality of the

oil filter to decline.[23] However, K&N represents that its products are "Made in U.S.A."

61.    Because of safety concerns for its riders, the Chuckwalla Valley Motorcycle

Association (CVMA) has "bann[ed] the use of aftermarket oil filters during its 2016-

2017 race series[,]" which ban includes K&N's products.[24]

62.    Based on information and belief, Plaintiff alleges that as an online retailer,

Defendant routinely monitors customers reviews on sites such as Amazon.com and

forums dedicated to motorcycle racing and powersports.

63.    On August 14, 2017, Defendant submitted a notice of Part 573 Safety Recall

Report (herein, the "Recall Report") to the National Highway Traffic Safety

---

[21] Henry V, Good until it goes wrong, REVZILLA (July 5, 2017), https://www.revzilla.com/motorcycle/kn-oil-filter-kn-303 (sort reviews from lowest to highest) (rating 1 star out of 5) (last visited September 24, 2018).

[22] Verified Purchas Review: Blown Gasket- CAUTION, AMAZON (Jan. 3, 2017), https://www.amazon.com/gp/customer-reviews/R29G1SMHJRI9HG/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B000E2CVIS (rating 1.0 out of 5 stars) (last visited September 24, 2018).

[23] See, e.g., T, Verified Purchase Review: CRAP FILTER/ PLEASE DON'T BUY IF YOU VALUE YOUR LIFE, AMAZON (May 6, 2017), https://www.amazon.com/gp/customer-reviews/R7CGRJKWQXJD9/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B000E2CVIS (rating 1.0 out of 5 stars) (last visited September 24, 2018).

[24] CVMA Banning All Aftermarket Oil Filters, ROADRACINGWORLD (April 12, 2016), http://www.roadracingworld.com/news/cvma-banning-all-aftermarket-oil-filters/ (last visited September 24, 2018).

Administration ("NHTSA") related to a recall of 186,000 of the same Oil Filters purchased and used by Plaintiffs. (*See* Exhibit A.) Per the Recall Report, K&N determined that "[o]il can leak at the area where a nut (intended for use to remove the oil filter during routine oil changes) is welded to the end of the filter canister." (*Id.* at 1) As a result, "if oil leaks from the oil filer, it could come into contact with the rear tire or rear brake of the motorcycle on which it is installed. If this were to occur, it could lead to a loss of control or a crash." (*Id.* at 1.)

64.    In or about November 2015, while under the ownership of Gryphon, K&N began using a new manufacturer, C.T. Industry Co., LTD in Thailand, to supply its powersports oil filters. (*Id.* at 2.) According to K&N, the supplier committed to manufacturing the filters to OEM specifications in accordance with SAE and ISO test protocols. (*Id.*) Defendant K&N, however, does not state that it did anything to confirm or ensure that such protocols were followed by the supplier.

65.    In September 2016, during the same month and year that K&N was acquired by Goldman Sachs, K&N noticed "a small increase in warranty claims relating to oil leaking around the nut" of the KN204 oil filters. (*See* Exhibit A at 2.) Based on representations from the manufacturer, K&N did not issue a recall at that time and instead continued "to monitor the situation." (*Id.*)

66.    Upon information and belief, prior to and after the acquisition by Goldman Sachs, K&N received complaints about the Separation Defect. As a result, and upon information and belief, Defendant K&N, with the involvement of Vice President Steve Williams, settled claims with consumers who experienced bodily and economic injury

as a result of the Separation Defect.

67.     K&N ultimately concluded that "the cause of the defect may have been a change in the material used to manufacture the oil filter canisters coupled with inadequate mating of the contact surfaces of the removal nut and canister end to which it is welded and possible improper welding of the nut to the canister." (*See* Exhibit A at 2.) In an attempt to correct the defect in the manufacturing of future oil filters, "the manufacturer revised the shape of the removal nut and canister end to improve the mating of the two components, which facilitated the welding process." K&N believed the manner in which the two components were welded together was the potential cause of the failures or oil leaks." (*Id*. at 3.)

68.     Per the Recall Report, "K&N will offer to replace the oil filters covered by the recall with new, improved oil filters, at no charge. Alternatively, at the option of the consumer, K&N will refund the purchase price of the recalled oil filter, after that filter is returned to K&N with proof of its purchase." (*Id*. at 3.)

69.     Thereafter, Defendant posted the following to its website:[25]

> K&N has discovered that certain KN-204 and KN-204C oil filters manufactured between March 1, 2016 and September 30, 2016, can leak oil at the area where a nut (intended for use to remove the oil filter during routine oil changes) is welded to the end of the filter. If there is such a leak, oil could come into contact with the rear tire or rear brake of the motorcycle on which the filter is installed. If this were to occur, it could lead to a loss of control or a crash. Therefore, K&N is offering to replace the affected oil filters at no charge. This offer of a free replacement also applies to those covered KN-204 and

---

[25] https://www.knfilters.com/recallkn204 (last viewed September 24, 2018).

KN-204C oil filters that may have been purchased for use in an application other than a motorcycle, such as an ATV (all-terrain vehicle) or PWC (personal watercraft).

70.    As K&N explained on its website "[t]he KN-204 (black) and KN-204C (chrome) oil filters covered by this recall have manufacturing date codes imprinted on the ends of the filters that contain as the second and third characters of the code the number/letter combinations of **3H**, **4H**, **5H**, **6H**, **7H**, **8H** or **9H**, with the number corresponding to the month of the year (i.e., 3 for the month of March, 4 for the month of April, etc.) and the letter "H" representing the year 2016."[26]

71.    In this safety recall, Defendant further warned that "IF YOU HAVE VERIFIED THAT YOU HAVE A KN-204 OR KN-204C OIL FILTER INSTALLED ON YOUR MOTORCYCLE OR POWERSPORT MACHINE THAT HAS ONE OF THE SEVEN LISTED DATE CODES, THEN DO NOT OPERATE IT, UNTIL THE OIL FILTER IS REPLACED."

72.    At all material times, the Oil Filters were utilized for their intended purpose and consistent with the instructions provided by Defendant.

## CLASS ALLEGATIONS

73.    Plaintiffs bring this action on their own behalf, and on behalf of a nationwide class pursuant to Federal Rules of Civil Procedure, Rule 23(a), 23(b)(2), and/or 23(b)(3):

---

[26] *Id.*

**Nationwide Class**

All persons or entities in the United States that purchased a
KN138, KN204, and/or KN303 Oil Filter.

74.     In the alternative to the Nationwide Class, and pursuant to Federal Rules of

Civil Procedure, Rule 23(c)(5), Plaintiffs seek to represent the following Minnesota,

Missouri, and Oregon Classes only in the event that the Court declines to certify the

Nationwide Class above:

**Minnesota Class**
All persons or entities in Minnesota that purchased a KN138,
KN204, and/or KN303 Oil Filter.

**Missouri Class**
All persons or entities in Missouri that purchased a KN138,
KN204, and/or KN303 Oil Filter.

**Oregon Class**
All persons or entities in Oregon that purchased a KN138,
KN204, and/or KN303 Oil Filter.

75.     Together, the Nationwide, Minnesota, Missouri, and Oregon Classes shall be

collectively referred to herein as the "Class." Excluded from the Class are Defendant,

its affiliates, employees, officers, and directors, and the Judge(s) assigned to this case.

Plaintiffs reserve the right to modify, change, or expand the Class definitions based on

discovery and further investigation.

76.     Numerosity: Upon information and belief, the Class is so numerous that

joinder of all members is impracticable. While the exact number and identities of

individual members of the Class are unknown at this time, such information being in

the sole possession of Defendant and obtainable by Plaintiffs only through the

discovery process, Plaintiffs believe, and on that basis allege, that tens of thousands of

Oil Filters have been sold in each of the States that are the subject of the Class.

77.     Existence and Predominance of Common Questions of Fact and Law:

Common questions of law and fact exist as to all members of the Class. These questions

predominate over the questions affecting individual Class Members. These common

legal and factual questions include, but are not limited to, whether:

> a.     Defendant negligently designed or manufactured the
>        Oil Filters;
>
> b.     The Oil Filters were sold with a defect;
>
> c.     Defendant knew of the defect but failed to disclose the
>        defect and its consequences to its customers;
>
> d.     A reasonable consumer would consider the defect or its
>        consequences to be material;
>
> e.     Defendant should be required to disclose the existence
>        of the defect;
>
> f.     Defendant's conduct violates the consumer protection
>        statutes asserted herein;
>
> g.     Plaintiffs and the Class were harmed and suffered
>        damages as a result of Defendant's conduct, and, if so,
>        the appropriate amount of damages; and
>
> h.     Plaintiffs and the Class are entitled to equitable relief.

78.     Typicality: All of Plaintiffs' claims are typical of the claims of the Class

because Plaintiffs purchased defective Oil Filters, as did each member of the Class.

Furthermore, Plaintiffs and all members of the Class sustained damages including, but

not limited to, ascertainable losses arising out of Defendant's wrongful conduct.

Plaintiffs are advancing the same claims and legal theories on behalf of themselves and

all absent Class members.

79.     Adequacy: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and together they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

80.     Superiority: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendant's product registration records, warranty claims and database of complaints.

81.     Defendant has acted, and refused to act, on grounds generally applicable to

the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

## NEGLIGENCE

## (On Behalf of the Nationwide Class Or, Alternatively, the State Sub-Classes)

82.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

83.    As the designer, manufacturer, distributor, and seller of the Oil Filters, Defendant had a duty to Plaintiffs and the Class to exercise reasonable care in the design, testing, manufacture, assembly, sale, and/or distribution of the Oil Filters, including a duty to provide a safe product that would performed as expected and intended, and to ensure that the Oil Filters did not cause Plaintiffs, other users, bystanders, or the public, unnecessary injuries or deaths.

84.    Defendant also owed Plaintiffs and the Class a duty to provide adequate instructions and warnings for the safe and effective use of the Oil Filters.

85.    Defendant breached each of these duties.

86.    Defendant designed, manufactured, distributed and sold the Oil Filters with a defect that permitted the Oil Filters to separate, shred, and fail without warning and while being used in their normal and intended manner.

87.    Defendant knew or should have known that the Oil Filters were defective and inherently dangerous and have a propensity to separate, shred, and fail without warning

and while being used in their normal and intended manner.

88.     Defendant failed to exercise ordinary care and breached their duties by, among other things:

    a.  Failure to use due care in the manufacture, distribution, design, sale, testing, and servicing of the Oil Filters in order to avoid the aforementioned risks to individuals;

    b.  Failure to provide adequate warning of the defect contained within the Oil Filters and its propensity to cause and/or contribute to an accident;

    c.  Failure to incorporate within the Oil Filters and its design reasonable safeguards and protections against the defect and the consequences thereof;

    d.  Failure to make timely correction to the design of the Oil Filters to correct the defect and consequences thereof;

    e.  Failure to adequately identify and mitigate the hazards associated with the Oil Filters in accordance with good engineering practices and other ways; and,

    f.  Were otherwise careless or negligent.

89.     As a direct, proximate and foreseeable result of Defendant's negligence and breach of the foregoing duties, Plaintiffs and the Class sustained damages.

## \SECOND CAUSE OF ACTION

### STRICT LIABILITY – PRODUCT DEFECT AND FAILURE TO WARN

### (On Behalf of the Nationwide Class Or, Alternatively, the State Sub-Classes)

90.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

91.     Defendant designed, manufactured, and sold the Oil Filters with a defect that caused the Oil Filters to suddenly separate, shred, and fail while being used in their normal, intended manner.

92.     Defendant knew that the Oil Filters would be used by consumers without inspection for defects.

93.     Defendant knew or should have known of the defect and of the use to which Plaintiffs and other consumers would put the Oil Filters upon purchase of the Oil Filters.

94.     At the time of the incidents described above, the Oil Filters were being used in a manner and fashion that was foreseeable by Defendant, and in a manner in which they were intended to be used.

95.     The Oil Filters were unsafe for their intended use by reason of defects in their manufacture, design, testing, components and constituents, so that they would not safely serve their purpose, but would instead expose the users of said product, and others, to serious injuries because of the defective design and manufacture of the Oil Filters.

96.     Defendant designed and manufactured the Oil Filters defectively, causing them to fail to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

97.     Defendant's conduct, statements, and omissions described above constitute material representations that were untrue, deceptive, and misleading because Defendant knowingly and intentionally concealed from Plaintiffs and the Class Members that the Oil Filters suffer from a defect (and the costs, safety risks, and diminished value of the Oil Filters as a result of these problems). Defendant should have disclosed this information because it was in a superior position to know the true facts related to the defect, and Plaintiffs and the Class Members could not reasonably be expected to learn or discover the true facts related to the defect.

98.     Defendant was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the Class before Defendant issued the recall and the allegations of Separation Defect became public.

99.     Defendant failed to warn Plaintiffs or the Class about the risks of failure and harm associated with use of the Oil Filters.

100.    The Oil Filters designed, manufactured, distributed, and sold by Defendant were defective because they were sold with inadequate warnings.

101.    The Oil Filters designed, manufactured, and sold by Defendant were defective because they were inadequately inspected and tested.

102.   Had Plaintiffs and the Class been warned about the defects within the Oil Filters and the risks of harm associated with use of the Oil Filters, Plaintiffs and the Class would not have purchased or utilized the Oil Filters.

103.   As a direct, proximate, and foreseeable result of Defendant's failure to adequately design and manufacture the Oil Filters and/or provide adequate warnings and instructions regarding use of the Oil Filters and the risk of harm posed by use of the Oil Filters, Plaintiffs and the Class were injured and suffered damages.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE MINNESOTA CONSUMER FRAUD ACT
### (Minn. Stat. § 325F.68, *et seq.*)

### (On Behalf of Plaintiff Penrod and the Minnesota Class)

104.   Plaintiff Penrod and the Minnesota Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

105.   Plaintiff Penrod brings this claim on behalf of himself and the Minnesota Class.

106.   The Minnesota Consumer Fraud Act prohibits "[t]he act, use or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive trade practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." Minn. Stat. § 325F.69.

107.   Plaintiff Penrod and the Minnesota Class are "persons" as that term is defined in Minn. Stat. § 325F.68.

108.   The Oil Filters are "merchandise" as that term is defined in Minn. Stat. § 325F.68.

109.   Defendant has engaged in fraud and deceptive trade practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff Penrod and the Minnesota Class Members that the Oil Filters suffer from a defect (and the costs, safety risks, and diminished value of the Oil Filters as a result of these problems). Defendant should have disclosed this information because it was in a superior position to know the true facts related to the defect, and Plaintiff Penrod and the Minnesota Class Members could not reasonably be expected to learn or discover the true facts related to the defect.

110.   The potential for the Oil Filters to fail suddenly and without warning, leading to property damage and/or accidents, constitutes a safety issue that triggered Defendant's duty to disclose the defect to consumers.

111.   These acts and practices have deceived Plaintiff Penrod and are likely to deceive the public. In failing to disclose the defect and suppressing other material facts from Plaintiff Penrod and the Minnesota Class Members, Defendant breached its duties to disclose these facts, violated the MCFA, and caused injuries to Plaintiff Penrod and the Minnesota Class Members. The omissions and acts of concealment by Defendant pertained to information that was material to Plaintiff Penrod and the Minnesota Class Members, as it would have been to all reasonable consumers.

112.   The injuries suffered by Plaintiff Penrod and the Minnesota Class Members are greatly outweighed by any potential countervailing benefit to consumers or to

competition, nor are they injuries that Plaintiff Penrod and the Minnesota Class

Members should have reasonably avoided.

<b>FOURTH CAUSE OF ACTION</b>

<b>VIOLATION OF THE MINNESOTA FALSE STATEMENT IN ADVERTISING<br>ACT (Minn. Stat. § 325F.67, <i>et seq.</i>)</b>

<b>(On Behalf of Plaintiff Penrod and the Minnesota Class)</b>

113.   Plaintiff Penrod and the Minnesota Class incorporate by reference each

preceding and succeeding paragraph as though fully set forth at length herein.

114.   Plaintiff Penrod brings this claim on behalf of himself and the Minnesota

Class.

115.   The False Statement in Advertising Act ("FSAA") prohibits the sale of

merchandise with advertisements that contain "any material assertion, representation, or

statement of fact which is untrue, deceptive, or misleading, shall, whether or not

pecuniary or other specific damage to any person occurs as a direct result thereof."

116.   As set forth above, Defendant misrepresented that its Oil Filters: "contain a

modern synthetic filter media, designed for ultimate flow with less pressure drop, yet

engineered for outstanding filtration[,]" and that the Oil Filters "provide outstanding

filtration levels and a high oil flow rate"; "are able to handle heavy duty applications";

function well with all types of oils; "will add increased performance to your motorcycle

or ATV"; are premium products "built to withstand the high demands of racing

conditions" and are "engineered for outstanding filtration" and "able to handle heavy

duty applications[.]"; and will be free from defects in materials and workmanship

28

during recommended service intervals or it will replace the Oil Filters free of charge.

117.   Defendant's conduct, statements, and omissions described above constitute material representations that were untrue, deceptive, and misleading and thus violate the FSAA because Defendant knowingly and intentionally concealed from Plaintiff Penrod and the Minnesota Class Members that the Oil Filters suffer from a defect (and the costs, safety risks, and diminished value of the Oil Filters as a result of these problems). Defendant should have disclosed this information because it was in a superior position to know the true facts related to the defect, and Plaintiff Penrod and Minnesota Class Members could not reasonably be expected to learn or discover the true facts related to the defect.

118.   The potential for the Oil Filters to fail suddenly and without warning, leading to property damage and/or accidents, constitutes a safety issue that triggered Defendant's duty to disclose the defect to consumers.

119.   These acts and practices have deceived Plaintiff Penrod and are likely to deceive the public. In failing to disclose the defect and suppressing other material facts from Plaintiff Penrod and the Minnesota Class Members, Defendant breached its duties to disclose these facts, violated the FSAA, and caused injuries to Plaintiff Penrod and the Minnesota Class Members. The omissions and acts of concealment by Defendant pertained to information that was material to Plaintiff Penrod and the Minnesota Class Members, as it would have been to all reasonable consumers.

120.   The injuries suffered by Plaintiff Penrod and the Minnesota Class Members are greatly outweighed by any potential countervailing benefit to consumers or to

competition, nor are they injuries that Plaintiff Penrod and the Minnesota Class

Members should have reasonably avoided.

### FIFTH CAUSE OF ACTION

**VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT**
**(Mo. Rev. Stat. § 407.010, *et seq.*)**

**(On Behalf of Plaintiff Erpenbach and the Missouri Class)**

121.   Plaintiff Erpenbach and the Missouri Class incorporate by reference each

preceding and succeeding paragraph as though fully set forth at length herein.

122.   Plaintiff Erpenbach brings this claim on behalf of himself and the Missouri

Class.

123.   The Missouri Merchandising Practices Act broadly prohibits false, fraudulent

or deceptive merchandising practices. Mo. Rev. Stat. § 407.020.

124.   At all relevant times, Defendant's sales or distribution of the Oil Filters was a

"sale" as defined by Section 407.010 because such sale or distribution constituted a

sale, lease, offer for sale or lease, or attempt to sell or lease merchandise for cash or on

credit.

125.   At all relevant times, Defendant's manufacturing, marketing, advertising,

sales and/or distribution of the Oil Filters was an "advertisement" as defined by Section

407.010 because such manufacturing, marketing, advertising, sales or distribution

constituted an attempt by publication, dissemination, solicitation, circulation, or any

other means to induce, directly or indirectly, any person to enter into any obligation or

acquire any title or interest in any merchandise.

126.   In connection with the sale or advertisement of the Oil Filters, Defendant failed to disclose that Oil Filters were defective. Defendant knew that the omissions and representations concerning the Oil Filters would be material to a reasonable consumer. As such, Defendant's acts and omissions as alleged constitute violations of Section 407.020

127.   Defendant engaged in the concealment, suppression or omission of the aforementioned material facts with the intent that consumers rely upon such concealment, suppression or omission of these material facts and purchase the Oil Filters with the design defect. Defendant misled and continues to mislead through their suppression regarding information about the defect.

128.   As a direct and proximate result of Defendant's acts and omissions, Plaintiff Erpenbach and the Missouri Class Members suffered damages and ascertainable losses in amounts to be determined at trial, by paying more for Oil Filters than they would have, or by not purchasing the Oil Filters at all.

129.   Pursuant to Section 407.025, Plaintiff Erpenbach and the Missouri Class Members seek to recover actual damages and attorneys' fees from Defendant.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT
### (Or. Rev. Stat. §§ 646.605, et seq.)

### (On Behalf of Plaintiff Welsh and the Oregon Class)

130.   Plaintiff Welsh and the Oregon Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

131.   Plaintiff Welsh brings this claim on behalf of himself and the Oregon Class.

132.   The Oregon Unfair Trade Practices Act ("OUTPA") prohibits a person from, in the course of the person's business, doing any of the following: "(e) Represent[ing] that . . . goods . . . have . . . characteristics . . . uses, benefits, . . . or qualities that they do not have; (g) Represent[ing] that . . . goods . . . are of a particular standard [or] quality … if they are of another; and (i) Advertis[ing] . . . goods or services with intent not to provide them as advertised." Or. Rev. Stat. § 646.608(1).

133.   Defendant is a person within the meaning of Or. Rev. Stat. § 646.605(4).

134.   The Oil Filters at issue are "goods" obtained primarily for personal family or household purposes within the meaning of Or. Rev. Stat. § 646.605(6).

135.   In the course of Defendant's business, it willfully failed to disclose and actively concealed the Oil Filters suffer from a defect (and the costs, safety risks, and diminished value of the Oil Filters as a result of these problems). Defendant should have disclosed this information because it was in a superior position to know the true facts related to the defect, and Plaintiff Welsh and the Oregon Class Members could not reasonably be expected to learn or discover the true facts related to the defect. Accordingly, Defendant engaged in unlawful trade practices, including representing that Oil Filters have characteristics, uses, benefits, and qualities which they do not have; representing that the Oil Filters are of a particular standard and quality when they are not; and advertising the Oil Filters with the intent not to sell them as advertised. Defendant knew or should have known that its conduct violated the OUTPA.

136.   As a result of these unlawful trade practices, Plaintiff Welsh and the Oregon Class Members have suffered ascertainable loss.

137.   Defendant engaged in a deceptive trade practice when it failed to disclose material information concerning the Oil Filters which was known to Defendant at the time of the sale. Defendant deliberately withheld the information about the Oil Filters propensity to structurally fail suddenly and without warning, leading to property damage and/or accidents, in order to ensure that consumers would purchase its Oil Filters and to induce the consumer to enter into a transaction.

138.   The propensity of the Oil Filters to fail suddenly and without warning, leading to property damage and/or accidents, constitutes a safety issue that triggered Defendant's duty to disclose the defect to consumers.

139.   As a direct and proximate result of Defendant's acts and omissions, Plaintiff Welsh and the Oregon Class Members suffered damages and ascertainable losses in amounts to be determined at trial, by paying more for Oil Filters than they would have, or by not purchasing the Oil Filters at all. Plaintiff Penrod and the Oregon Class Members overpaid for their Oil Filters and did not receive the benefit of their bargain.

140.   Plaintiff Welsh and the Oregon Class Members are entitled to recover the greater of actual damages or $200 pursuant to Or. Rev. Stat. § 646.638(1), and any other applicable damages on the basis of Defendant's conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

141.   Pursuant to Or. Rev. Stat. § 646.638(2), Plaintiff Welsh will mail a copy of

the complaint to Oregon's attorney general.

## SEVENTH CAUSE OF ACTION

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Or. Rev. Stat. § 72.3140)

### (On Behalf of Plaintiff Welsh and the Oregon Class)

142.   Plaintiff Welsh and the Oregon Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

143.   Plaintiff Welsh brings this claim on behalf of himself and the Oregon Class.

144.   Defendant is and was at all relevant times a merchant with respect to motorcycle component parts.

145.   A warranty that the Oil Filters were in merchantable condition is implied by law in the instant transactions.

146.   These Oil Filters, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which oil filters are used. Specifically, the Oil Filters are inherently defective in that there are defects in the Oil Filters that create the potential for the Oil Filters to structurally fail suddenly and without warning, leading to property damage and/or accidents.

147.   Defendant was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the Class before or within a reasonable amount of time after Defendant issued the recall and the allegations of Separation Defect became public.

148.   As a direct and proximate result of Defendant's breach of the warranties of merchantability, Plaintiff Welsh and the Oregon Class have been damaged in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

## (On Behalf of the Nationwide Class Or, Alternatively, the State Sub-Classes)

149.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

150.   Defendant expressly warranted that the Oil Filters were of high quality and, at a minimum, would work properly.

151.   Defendant breached this warranty by selling to Plaintiffs and Class Members the Oil Filters which are not of high quality, and which fail prematurely and/or fail to function properly.

152.   As a result of Defendant's actions, Plaintiffs and Class Members have suffered economic damages including, but not limited to, costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

153.   Defendant attempts to disclaim or limit these express warranties vis-à-vis consumers are unconscionable and unenforceable under the circumstances here. Specifically, Defendant's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

154.   The time limits contained in Defendant's warranty period were also

unconscionable and inadequate to protect Plaintiffs and members of the Class. Among

other things, Plaintiffs and Class Members had no meaningful choice in determining

these time limitations, the terms of which unreasonably favored Defendant. A gross

disparity in bargaining power existed between Defendant and Class Members, and

Defendant knew or should have known that the Oil Filters were defective at the time of

sale and would fail well before their useful lives.

155.   Plaintiffs and Class Members have complied with all obligations under the

warranty, or otherwise have been excused from performance of said obligations as a

result of Defendant's conduct described herein.

## NINTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY

## (On Behalf of the Nationwide Class Or, Alternatively, the State Sub-Classes)

156.    Plaintiffs and the Class incorporate by reference each preceding and

succeeding paragraph as though fully set forth at length herein.

157.   Defendant was at all relevant times the manufacturer, distributor, warrantor,

and/or seller of the Oil Filters. Defendant knew or had reason to know of the specific

use for which the Oil Filters were purchased.

158.   Defendant provided Plaintiffs and the other Class Members with an implied

warranty that the Oil Filters were merchantable and fit for the ordinary purposes for

which they were sold. However, the Oil Filters were not fit for their ordinary purpose of

use within automobiles, motorcycles, and other vehicles at the time of sale or thereafter

because, *inter alia*, the Oil Filters contained a defect which permitted them to separate

and shred, leading to potential engine fires, accidents, property damage, and/or personal injury. Therefore, the Oil Filters were not fit for their particular purpose of providing safe and reliable oil filtration for automobiles, motorcycles and/or other vehicles.

159.   Defendant impliedly warranted that the Oil Filters were of merchantable quality and fit for such use. This implied warranty included, among other things, a warranty that the Oil Filters would provide safe and reliable oil filtration for automobiles, motorcycles, and other vehicles, even when used under extreme conditions.

160.   Contrary to the applicable implied warranties, the Oil Filters, at the time of sale and thereafter, were not fit for their ordinary and intended purpose. Instead, the Oil Filters suffer from a defective design and/or manufacturing defect(s).

161.   Defendant's actions, as complained of herein, breached the implied warranty that the Oil Filters were of merchantable quality and fit for such use.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully requests that this Court:

A.   determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B.   appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

C.      award all actual, general, special, incidental, statutory, and consequential

damages and restitution to which Plaintiffs and the Class Members are entitled;

D.      award pre-judgment and post-judgment interest on such monetary relief;

E.      grant appropriate injunctive and/or declaratory relief, including, without

limitation, an order that requires Defendant to recall and/or replace the Oil Filters and to

extend the applicable warranties to a reasonable period of time, or, at a minimum, to

provide Plaintiffs and Class Members with appropriate curative notice regarding the

existence and cause of the defect;

F.      award reasonable attorneys' fees and costs; and

G.      grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the putative Class, demand a trial by jury

on all issues so triable.


Dated: October 11, 2018              By:     s/ *Daniel C. Hedlund*
                                             Daniel E. Gustafson (#202241)
                                             Daniel C. Hedlund (#258337)
                                             Catherine K. Smith (#353723)
                                             Ling S. Wang (#399447)
                                             Canadian Pacific Plaza
                                             120 South Sixth Street, Suite 2600
                                             Minneapolis, Minnesota 55402
                                             Tel: (612) 333-8844
                                             Fax: (612) 339-6622
                                             dgustafson@gustafsongluek.com
                                             dhedlund@gustafsongluek.com
                                             csmith@gustafsongluek.com
                                             lwang@gustafsongluek.com

Matthew D. Schelkopf
Joseph G. Sauder
Joseph B. Kenney
**SAUDER SCHELKOPF**
555 Lancaster Avenue
Berwyn, PA 19312
Tel: (610) 200-0581
Facsimile: (610) 421-1326
mds@sstriallawyers.com
jgs@sstriallawyers.com
jbk@sstriallawyers.com

Richard D. McCune
David C. Wright
**McCune Wright Arevalo, LLP**
3281 East Guasti Road, Suite 100
Ontario, California 91761
Tel: (909) 557-1250
Facsimile: (909) 557-1275
rdm@mccunewright.com
dcw@mccunewright.com