UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JOHN PENROD, GUS ERPENBACH, and JUAN WELSH, individually and on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>K&N ENGINEERING, INC.,<br><br>    Defendant. | Court File No.: 18-cv-02907-ECT-LIB<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT K&N ENGINEERING, INC.'S MOTION TO DISMISS THE COMPLAINT** |

# TABLE OF CONTENTS

**Page No.**

I.  INTRODUCTION ................................................................................. 1

II. RELEVANT FACTUAL BACKGROUND ........................................... 2

    A.    K&N's Oil Filters Are Covered Under An Express Warranty ................... 2

    B.    K&N Recalled Its Model KN-204 Oil Filters ................................. 4

    C.    The Plaintiffs' Claims ............................................................ 6

        1.    Minnesota Plaintiff Penrod ................................................. 6

        2.    Missouri Plaintiff Erpenbach ............................................. 6

        3.    Oregon Plaintiff Welsh ..................................................... 7

III. LEGAL STANDARDS ...................................................................... 7

    A.    Motion To Dismiss For Lack Of Jurisdiction ................................. 7

        1.    Subject Matter Jurisdiction ............................................... 7

        2.    Personal Jurisdiction ........................................................ 8

    B.    Motion To Strike Class Allegations ............................................. 9

    C.    Failure To State A Claim Under Rule 12(b)(6)................................ 10

    D.    Pleading Fraud Under Rule 9(b) ................................................. 11

IV. DISCUSSION.................................................................................. 12

    A.    The Court Lacks Jurisdiction To Decide Plaintiffs' Claims ..................... 12

        1.    The Court has no Subject-Matter Jurisdiction ............................... 12

        2.    There is no Personal Jurisdiction over K&N as to Certain Claims..................................................................... 15

    B.    Plaintiffs' Case Cannot Proceed As A Class Action................................ 18

        1.    Typicality and Commonality are Lacking...................................... 19

            a.    Determining Damages Would Require Individualized Fact Issues ............................................................. 19

            b.    Putative Class Members' Claims are Subject to Different Warranty Terms..................................... 21

        2.    The Class Allegations are Overbroad ............................................ 22

    C.    Plaintiffs Cannot Plead Breach Of An Express Warranty ....................... 23

    D.    The Consumer Fraud And False Advertising Claims Fail As A Matter Of Law .................................................................... 25

# TABLE OF CONTENTS
## (continued)

**Page No.**

    1.    Penrod Lacks Standing under the Consumer Protection Statutes ............................................................................. 25

    2.    Penrod's Consumer Protection Claims Also Fail under Rule 9(b) ................................................................................... 26

    3.    Penrod's Consumer Claims Rely on Statements that are Puffery .............................................................................. 28

V.    CONCLUSION ........................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Italian Pasta Co. v. New World Pasta Co.*,
  371 F.3d 387 (8th Cir. 2004) ..................................................................... 28

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................... 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................... 10

*Bennett v. Roberts*,
  No. 96 C 6917, 2000 U.S. Dist. LEXIS 1693 (N.D. Ill. Feb. 14, 2000) ..................... 19

*BJC Health Sys. v. Columbia Cas. Co.*,
  478 F.3d 908 (8th Cir. 2007) ..................................................................... 11

*BNSF Ry. v. Tyrell*,
  137 S. Ct. 1549 (2017) ............................................................................... 16

*Bristol-Myers Squibb Co. v. Superior Court*,
  137 S. Ct. 1773 (2017) ...................................................................... 16, 17, 18

*Browe v. Evenflo Co.*,
  No. 14-4690 ADM/JJK, 2015 U.S. Dist. LEXIS 82540
  (D. Minn. June 25, 2015) ...................................................................... 28, 29

*Buetow v. A.L.S. Enter., Inc.*,
  259 F.R.D. 187 (D. Minn. 2009) ................................................................. 19

*Buetow v. A.L.S. Enter., Inc.*,
  888 F.Supp.2d 956 (D. Minn. 2012) ...................................................... 25, 26

*Chavez v. Church & Dwight Co.*,
  No. 17 C 1948, 2018 U.S. Dist. LEXIS 82642 (N.D. Ill. May 16, 2018) ................... 17

*Chin v. General Mills, Inc.*,
  No. 12-2150, 2013 U.S. Dist. LEXIS 77345 (D. Minn. May 31, 2013) ..................... 23

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ....................................................................................... 9

*United States ex rel. Costner v. United States*,
   317 F.3d 883 (8th Cir. 2003) ................................................................ 12

*Daigle v. Ford Motor Co.*,
   713 F.Supp.2d 822 (D. Minn. 2010) ............................................. 10, 23, 24

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) ........................................................................ 16

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ............................................................................ 8

*Dalton v. Simonson Station Stores, Inc.*,
   No. 0:17-cv-04427, 2018 U.S. Dist. LEXIS 87538 (D. Minn. May 22,
   2018) ................................................................................................... 5

*In re Dental Supplies Antitrust Litig.*,
   No. 16 Civ. 696 (BMC), 2017 U.S. Dist. LEXIS 153265 (E.D.N.Y.
   Sept. 20, 2017) ................................................................................... 15

*Drobnak v. Andersen Corp.*,
   561 F.3d 778 (8th Cir. 2009) ............................................................... 27

*Elfaridi v. Mercedes-Benz USA, LLC*,
   No. 4:16 CV 1896 CDP, 2018 U.S. Dist. LEXIS 145196 (E.D. Mo.
   Aug. 27, 2018) ................................................................................... 24

*Farm Credit Servs. of Am. v. Am. State Bank*,
   339 F.3d 764 (8th Cir. 2003) ............................................................... 11

*Ferrari v. Best Buy Co.*,
   No. 14-2956, 2015 U.S. Dist. LEXIS 61988 (D. Minn. Mar. 13, 2015) ..... 23

*Gannon Joint Venture Ltd. P'ship v. Masonite Corp.*,
   No. 4:07CV1242 JCH, 2008 U.S. Dist. LEXIS 39038 (E.D. Mo. May
   14, 2008) ............................................................................................ 24

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ....................................................................... 10, 20

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ............................................................................ 15

*Greene v. Mizuho Bank Ltd.*,
   289 F.Supp.3d 870 (N.D. Ill. 2017) ..................................................... 17

*Hager v. Ark. Dep't of Health*,
  735 F.3d 1009 (8th Cir. 2013) ................................................................. 11

*Hart v. Louisiana-Pacific Corp.*,
  641 Fed. App'x 222 (4th Cir. 2016) ......................................................... 21

*Hartmann v. Schauer*,
  No. 16-3970, 2017 U.S. Dist. LEXIS 132645 (D. Minn. July 5, 2017) ....... 5

*Helicopteros Nacionales De Colombia v. Hall*,
  466 U.S. 408 (1984) ................................................................................... 8

*International Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ................................................................................... 8

*Johnson v. Bayer*,
  No. 4:17-CV-02774-JAR, 2018 U.S. Dist. LEXIS 27480 (E.D. Mo. Feb.
  21, 2018) ................................................................................................. 17

*United States ex rel. Joshi v. St. Luke's Hosp., Inc.*,
  441 F.3d 552 (8th Cir. 2006) ................................................................... 12

*K-V Pharm. Co. v. J. Uriach & CIA, S.A.*,
  648 F.3d 588 (8th Cir. 2011) ..................................................................... 8

*Knotts v. Nissan N. Am., Inc.*,
  No. 17-cv05049, 2018 U.S. Dist. LEXIS 175334 (D. Minn. Oct. 10,
  2018) ...................................................................................................... 18

*LensCrafters, Inc. v. Vision World*,
  943 F.Supp. 1481 (D. Minn. 1996) .................................................... 28, 29

*Lieberson v. Johnson & Johnson Consumer Cos.*,
  865 F.Supp.2d 529 (D.N.J. 2011) ............................................................ 23

*Ly v. Nystrom*,
  615 N.W.2d 303 (Minn. 2000) .................................................................. 25

*Masepohl v. Am. Tobacco Co.*,
  974 F.Supp. 1245 (D. Minn. 1997) ........................................................... 24

*McAteer v. Target Corp.*,
  No. 18-349, 2018 U.S. Dist. LEXIS 124923 (D. Minn. July 26, 2018) ...... 29

*McDonnel v. Nature Way Prods., LLC*,
  No. 16 C 5011, 2017 U.S. Dist. LEXIS 177892 (N.D. Ill. Oct. 26, 2017) .... 17

*McGregor v. Uponor, Inc.*,
   No. 09-1136 ADM.JJK, 2010 U.S. Dist. LEXIS 162 (D. Minn. Jan. 4,
   2010) ...................................................................................................... 23, 24, 26

*Milavetz, Gallop & Milavetz, P.A. v. Wells Fargo Bank, N.A.*,
   No. 12-CV-0875, 2012 U.S. Dist. LEXIS 131628 (D. Minn. Aug, 22,
   2012) .................................................................................................................. 26

*Moore v. Bayer Corp.*,
   No. 4:18 CV 262 CDP, 2018 U.S. Dist. LEXIS 147020 (E.D. Mo. Aug.
   29, 2018) ...................................................................................................... 16, 17

*O'Neil v. Simplicity, Inc.*,
   574 F.3d 501 (8th Cir. 2009) ............................................................................. 22

*Osborn v. United States*,
   918 F.2d 724 (8th Cir. 1990) ............................................................................... 8

*Piper Jaffray Cos., Inc. v. National Union Fire Ins. Co.*,
   967 F.Supp. 1148 (D. Minn. 1997) ...................................................................... 2

*Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*,
   No. 16-665, 2017 U.S. Dist. LEXIS 114733 (E.D. Pa. July 24, 2017) ...................... 17

*Retro TV Network, Inc. v. Luken Commc'ns, LLC*,
   696 F.3d 766 (8th Cir. 2012) ............................................................................. 11

*Sawczyn v. BMO Harris Bank Nat'l Ass'n*,
   8 F.Supp.3d 1108 (D. Minn. 2014) ....................................................................... 8

*Schaaf v. Residential Funding Corp.*,
   517 F.3d 544 (8th Cir. 2008) ......................................................................... 2, 10

*Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*,
   11 F.Supp.3d 933 (D. Minn. 2014) ..................................................................... 25

*Semanko v. Minn. Mut. Life Ins. Co.*,
   168 F.Supp.2d 997 (D. Minn. 2011) ................................................................... 28

*Smith v. Bayer Corp. (In re Baycol Prods. Litig.)*,
   593 F.3d 716 (8th Cir. 2010) ............................................................................... 9

*In re St. Jude Med. Inc.*,
   No. 01-1396, 2009 U.S. Dist. LEXIS 54286 (D. Minn. June 23, 2009)...................... 9

*Stearns v. Select Comfort Retail Corp.*,
    763 F.Supp.2d 1128 (N.D. Cal. 2010) ............................................................ 9, 10, 26

*T. B. Allen & Assocs., Inc. v. Euro-Pro Operating LLC*,
    No. 11-3479, 2013 U.S. Dist. LEXIS 1414 (D. Minn. Jan. 4, 2013).......................... 11

*Thunander v. Uponor, Inc.*,
    887 F.Supp.2d 850 (D. Minn. 2012) ...................................................................... 2, 27

*United Inds. Corp. v. Clorox Co.*,
    140 F.3d 1175 (8th Cir. 1998) ..................................................................................... 28

*Vaith v. GM, LLC*,
    No. 18-cv-031 (JRT/HB), 2018 U.S. Dist. LEXIS 121665 (D. Minn.
    June 28, 2018) .............................................................................................................. 27

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*,
    646 F.3d 589 (8th Cir. 2011) ......................................................................................... 8

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ......................................................................................... 9

*Wenokur v. Axa Equitable Life Ins. Co.*,
    No. CV-17-00165-PHX-DLR, 2017 U.S. Dist. LEXIS 162812 (D. Ariz.
    Oct. 2, 2017).................................................................................................................. 17

## <u>Statutes</u>

28 U.S.C. §1332(a) ............................................................................................................ 12

28 U.S.C. §1332(a)(1) ......................................................................................................... 7

28 U.S.C. §1332(d)(2)(A) ............................................................................................. 7, 12

28 U.S.C. § 1332(d)(5)(B)............................................................................................. 8, 15

Minn. Stat. §8.31, subd. 3a ............................................................................................... 25

Minn. Stat. § 336.2-313(1)(a)........................................................................................... 23

### <u>Other Authorities</u>

Fed. R. Civ. P. 9(b) ...................................................................................... 11, 26, 27, 28, 31

Fed. R. Civ. P. 12 ........................................................................................................... 10

Fed. R. Civ. P. 12(b)(1) .................................................................................................... 8

Fed. R. Civ. P. 12(b)(2) .................................................................................................... 8

Fed. R. Civ. P. 12(b)(6) .................................................................................. 10, 11, 31

Fed. R. Civ. P. 12(f) ..................................................................................................... 9, 10

Fed. R. Civ. P. 12(h)(3) ..................................................................................................... 8

Fed. R. Civ. P. 23(c)(1)(A) ............................................................................................... 9

Fed. R. Civ. P. 23(d)(1)(D) ............................................................................................... 9

Fed. R. Evid. 201(b)(2) ..................................................................................................... 5

## I.     INTRODUCTION

Plaintiffs allege that all purchasers of three oil filter models sold by defendant K&N Engineering (KN-204, KN-303 and KN-138) were damaged as a result of their purchases of those products.   While the damages claims are fatally vague, Plaintiffs purportedly seek to recover in this lawsuit what K&N already offered consumers through both its express warranty and its recall of the KN-204, which is the only product allegedly purchased by Plaintiffs.   The remedies that K&N offered would fully compensate consumers for purchasing the KN-204 with a refund of the purchase price or a free replacement oil filter.   Despite these available remedies, Plaintiffs either rejected K&N's offers to reimburse alleged losses or failed to even notify K&N of their claims and elected to sue instead.   Perhaps equally problematically, Plaintiffs only allege that they purchased the KN-204 filter and do not allege that they purchased either of the other two oil filter models addressed in their complaint.   Plaintiffs in a class action have no standing where remedies were available to compensate them for the full amount of their losses or to bring claims for products they did not purchase.

Moreover, the official record of the voluntary recall for the KN-204 reflects that only .06% of the filters purchased by consumers failed to work as warranted.   Such a miniscule number of product failures did not and could not cause damages in an amount necessary to meet the jurisdictional minimum required for this lawsuit.   And even if there were total damages sufficient to meet the Court's jurisdictional requirements, the Court would not have jurisdiction over K&N for claims that did not occur in Minnesota.  Further, even assuming the Minnesota claims could meet the jurisdictional minimum,

which is not possible, all purchasers of the oil filters (which is how the proposed class is described) would not have necessarily incurred damage (since not all oil filters failed) and those few consumers who did incur damages and have not already been fully compensated by K&N would need to have their alleged damages evaluated on a case-by-case basis, meaning that class treatment would not be possible here.

Given that these deficiencies of lack of jurisdiction and failure to state a claim cannot be cured by amendment, the Court should dismiss with prejudice Plaintiffs' claims.  If any cause of action remains, the Court should strike Plaintiffs' overbroad and fatally vague class allegations.

## II.     RELEVANT FACTUAL BACKGROUND[1]

### A.     K&N's Oil Filters Are Covered Under An Express Warranty

K&N is a leading brand of oil filters and other parts for cars, trucks, motorcycles and other vehicles and industrial applications.  (Dkt. 1 at ¶¶32, 34.)  At all relevant times, K&N's filters have been sold subject to an express, limited warranty (the "Warranty"). (Declaration of Steve Williams ("Williams Decl.") at ¶¶ 3-4.) [2]  Under the Warranty that applied between April and June 2017, when Plaintiffs allegedly purchased their filters,

---

[1] K&N's reference to the complaint's allegations does not admit their truth.  K&N merely summarizes allegations due to the Court's obligation to accept well-pled allegations as true on this particular motion.  *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).

[2] The Warranty is properly considered on this motion because it is referenced in the complaint.  (Dkt. 1 at ¶¶153-54; *Thunander v. Uponor, Inc.*, 887 F.Supp.2d 850, 859 n.1 (D. Minn. 2012) (warranties are material to a motion to dismiss where the complaint referred to them); *Piper Jaffray Cos., Inc. v. National Union Fire Ins. Co.*, 967 F.Supp. 1148, 1152 (D. Minn. 1997) (a court may consider materials "necessarily embraced by the pleadings")).

K&N agreed that "[a]ny filter proven defective during the engine or equipment manufacturer's or during the oil supplier's recommended service intervals will be replaced at no charge." (Williams Decl. at ¶3.) The Warranty also provided that, "[i]n the event of an engine or equipment failure directly caused by a defective K&N oil filter, which was properly installed and changed following the engine or equipment manufacturer's recommended service intervals, K&N will repair the damaged engine or equipment." (*Id.*) The Warranty required that claims for engine or equipment repairs be submitted within thirty days after damage was discovered. (*Id.*)

In January 2018, K&N updated the Warranty language on its website. (Williams Decl. at ¶4.) The updated Warranty still covers "defects in materials and workmanship of your K&N Oil Filter" and provides that K&N would repair, replace or refund the purchase price of any defective filter. (Williams Decl., Ex. A.) The new Warranty also limits implied warranties, including the warranty of merchantability, by stating the following under "**LIMITATION OF LIABILITY**":

> THE REMEDIES DESCRIBED ABOVE ARE YOUR SOLE AND EXCLUSIVE REMEDIES AND OUR ENTIRE LIABILITY FOR ANY BREACH OF THIS LIMITED WARRANTY. OUR LIABILITY SHALL UNDER NO CIRCUMSTANCES EXCEED THE ACTUAL AMOUNT PAID BY YOU FOR THE PRODUCT, NOR SHALL WE UNDER ANY CIRCUMSTANCES BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, SPECIAL OR PUNITIVE DAMAGES OR LOSSES, WHETHER DIRECT OR INDIRECT. (*Id.*)

The packaging of each filter identified in the complaint specified that the product was subject to K&N's Limited Warranty. (Williams Decl. at ¶5.) At all relevant times, the full warranty terms were set forth on K&N's website. (*Id.*)

### B.   K&N Recalled Its Model KN-204 Oil Filters[3]

Motorcycle oil filters are generally used for between 6 to 12 months, or 4,000 to 10,000 miles, whichever occurs first, before being removed and discarded as part of routine engine maintenance.  (Williams Decl. at ¶13.)  Over the past five years, K&N has sold directly to consumers, dealers and distributors an estimated 800,000 powersports (*i.e.,* motorcycles, personal watercraft and all-terrain vehicles) oil filters annually in the United States, of which an estimated 220,000 were KN-204 oil filters.  (*Id.* at ¶12.) Around March 2017, K&N observed an increase in consumer warranty claims involving the KN-204 filter and began analyzing those claims to determine the manufacturing dates of the failed filters.  (Dkt. 1, Ex. A.)  In late July 2017, K&N learned that, while the number of warranty claims involving the KN-204 filters was less than 1% of all filters sold, the frequency of claims for KN-204 filters manufactured between March and September 2016 was greater than historical norms for K&N's products.  (*Id.*)  In total, .06% of the filters were estimated to have failed, with 85 failures reported as of November 30, 2017.  (Williams Decl., Ex. B.)  While K&N had paid (or at least offered to pay) every documented warranty claim presented to it, and while the vast majority of the filters never failed and had performed as warranted during their use, in August 2017,

---

[3] Plaintiffs attach to their complaint a Part 573 Safety Recall Report submitted on August 14, 2017 relating to KN-204 filters.  As Plaintiffs' counsel were aware when they filed the complaint, this report was superseded and the ***operative report*** was submitted on November 30, 2017.  The operative report is Exhibit B to the Williams Declaration.

K&N decided to initiate a recall of KN-204 filters out of an abundance of caution.  (*Id.*)[4]

On August 14, 2017, K&N submitted an initial safety recall report to the National Highway Traffic Safety Administration ("NHTSA") for KN-204 filters manufactured between March 1 and September 30, 2016.  (Dkt. 1 at ¶63, Ex. A.)  The recall was originally estimated to affect 186,000 filters but, after further investigation, the number was reduced to 134,674 filters.  (Williams Decl., Ex. B.)  Pursuant to the recall, K&N offered to replace the KN-204 filters with new filters at no charge to consumers.  (*Id.*)  Alternatively, at the option of the consumer, K&N offered to refund the purchase price of KN-204 filters if the consumer provided proof of purchase.  (Dkt. 1 at ¶68.)

In addition to posting a recall notice on its website, on October 6, 2017, K&N began mailing recall notifications approved by NHTSA to all consumers who purchased KN-204 filters between March 1, 2016 and August 8, 2017 for whom K&N had mailing addresses.  (Dkt. 1 at ¶¶69-71; Williams Decl., Ex. B.)  That same day, K&N began sending recall notices to all dealers and distributors to whom it had sold KN-204 filters during the same period.  (Williams Decl., Ex. B.)  The recall notification process was completed by October 11, 2017.  (*Id.*)  The KN-204 is the only K&N oil filter subject to a recall.  (Williams Decl. at ¶11.)  No other oil filters manufactured for K&N have ever

---

[4] Because the motion to dismiss is for lack of jurisdiction, the Court can consider external evidence that contradicts Plaintiffs' allegations.  *Dalton v. Simonson Station Stores, Inc.*, No. 0:17-cv-04427 (SRN/LIB), 2018 U.S. Dist. LEXIS 87538, at *1 (D. Minn. May 22, 2018).  The recall documents attached as Exhibits B and D to the Williams Declaration would alternatively be subject to judicial notice because they are publicly available.  Fed. R. Evid. 201(b)(2); *Hartmann v. Schauer*, No. 16-3970 (PJS/BRT), 2017 U.S. Dist. LEXIS 132645, at *10 (D. Minn. July 5, 2017).

been recalled and K&N is not aware of any facts that would warrant a recall of any other filters.  (*Id.*)

### C.    The Plaintiffs' Claims

#### 1.    Minnesota Plaintiff Penrod

In approximately June 2017, John Penrod allegedly paid a third-party retailer in Minnesota to install a KN-204 filter on his motorcycle during routine maintenance.  (Dkt. 1 at ¶12.)  In July 2017, Penrod was operating his motorcycle on a highway when he allegedly experienced issues with the motorcycle's performance.  (*Id.* at ¶13.)  When he pulled over, Penrod observed engine oil covering his rear tire.  (*Id.*)  Penrod contacted K&N and K&N offered Penrod what he had demanded; approximately $300 for the cost of new oil and a tire.  (*Id.* at ¶14.)  Without explanation, Penrod declined this compensation for his alleged damages.  (*Id.*)

#### 2.    Missouri Plaintiff Erpenbach

On April 9, 2017, Gus Erpenbach allegedly purchased a KN-204 filter from Walmart online and picked it up at a Walmart store in Bridgeton, Missouri.  (Dkt. 1 at ¶19.)  Erpenbach alleges that he researched oil filters prior to his purchase and chose K&N's product due to the company's positive reputation.  (*Id.*)

On April 21, 2018, Erpenbach was operating his motorcycle when he noticed the motorcycle's performance decline.  (*Id.* at ¶20.)  Erpenbach alleges that he pulled over and observed engine oil covering his rear tire and spilling out of the filter.  (*Id.*)  Erpenbach allegedly purchased cleaner and towels to remove the oil from his motorcycle, purchased products to clean and lubricate the motorcycle chain, purchased a new filter

and quarts of oil and performed an engine oil change.  (*Id.* at ¶21.)  Erpenbach claims that

he attempted to contact K&N by telephone but no-one answered and he was not able to

leave a message.  (*Id.* at ¶22.)  Erpenbach does not allege that he ever visited K&N's

recall website for contact information (*e.g.,* the KN-204 recall phone number and email

address posted for purchasers), submitted a warranty or recall claim to K&N or that K&N

rejected any such claim.

### 3.    Oregon Plaintiff Welsh

Around June 2017, Juan Welsh allegedly purchased a KN-204 filter from a retailer

in Oregon and paid the store to install the filter on his motorcycle.  (Dkt. 1 at ¶27.)  On

July 10, 2018 (which would be an unusually long time to keep the same oil filter on a

motorcycle), Welsh was allegedly operating his motorcycle in Idaho when he observed

the oil filter explode.  (*Id.* at ¶28.)  Welsh alleges that his motorcycle engine had to be

replaced at a cost of approximately $10,000.  (*Id.*)  Welsh does not allege that he ever (1)

contacted K&N to notify it of the issue, (2) submitted a warranty or recall claim or (3)

requested a refund or reimbursement.

## III.   LEGAL STANDARDS

### A.    Motion To Dismiss For Lack Of Jurisdiction

### 1.    Subject Matter Jurisdiction

The Court has diversity jurisdiction over actions involving an amount in

controversy that exceeds $75,000 and between citizens of different states.  28 U.S.C.

§1332(a)(1).  Under the Class Action Fairness Act (CAFA), jurisdiction exists where the

amount in controversy exceeds $5,000,000.  §1332(d)(2)(A).  The Court does not have

jurisdiction over a class action where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." §1332(d)(5)(B).

On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court may consider matters outside the pleadings without converting the motion into one for summary judgment. *Osborn v. United States*, 918 F.2d 724, 729-30 & n.6 (8th Cir. 1990); *Sawczyn v. BMO Harris Bank Nat'l Ass'n*, 8 F.Supp.3d 1108, 1111 (D. Minn. 2014). If the Court determines that it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civil. P. 12(h)(3).

### 2.    Personal Jurisdiction

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a plaintiff must plead facts sufficient to support a reasonable inference that the defendant is subject to jurisdiction in the state. *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011). To subject a defendant to the Court's jurisdiction, due process requires that the defendant have minimum contacts with the state such that maintaining the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

To exercise jurisdiction over an out-of-state defendant:  (1) jurisdiction must be allowed by the Minnesota long-arm statute; and (2) the long-arm statute must comport with due process. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593-94 (8th Cir. 2011). Specific or "conduct-linked" jurisdiction involves suits "arising out of or related to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014); *Helicopteros Nacionales De Colombia v. Hall*, 466

U.S. 408, 414 n.9 (1984).

### B.   Motion To Strike Class Allegations

Rule 12(f) permits the Court to "strike from a pleading  . . . any redundant, immaterial, impertinent, or scandalous matter."  "Where a plaintiff's class allegations are insufficient to satisfy the requirements for certification, the Court has authority to strike those allegations under Rule 23(d)(1)(D)."  *In re St. Jude Med. Inc.*, No. 01-1396 (JRT/FLN), 2009 U.S. Dist. LEXIS 54286, at *5-6 (D. Minn. June 23, 2009).  "A plaintiff seeking to bring a class action has the burden of showing:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (2) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  *Stearns v. Select Comfort Retail Corp.*, 763 F.Supp.2d 1128, 1151-52 (N.D. Cal. 2010) (citing Rule 23(a)).

The Court must conduct a "rigorous analysis" to determine whether a plaintiff can satisfy the Rule 23 requirements for class certification.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).  Rule 23 expressly requires that this determination be conducted "[a]t an early practicable time."  Fed. R. Civil. P. 23(c)(1)(A).  The Court need not wait for plaintiffs to file a certification motion.  *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 941 (9th Cir. 2009) (a "defendant may move to deny class certification before a plaintiff files a motion to certify a class"); *Smith v. Bayer Corp. (In re Baycol Prods. Litig.)*, 593 F.3d 716, 720 n.2 (8th Cir. 2010) (reversed on other grounds) (citing *Vinole*).

Class certification can be denied on the pleadings alone because "[s]ometimes the

issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  Accordingly, when it is clear at the pleadings stage that a class cannot be maintained, "[a] motion to strike may be appropriate if the result is to make a trial less complicated or otherwise streamline the ultimate resolution of the action." *Daigle v. Ford Motor Co.*, 713 F.Supp.2d 822, 830 (D. Minn. 2010); *see also Gen. Tel. Co.*, 457 U.S. at 160.  Courts can and should grant motions to strike class allegations under Rule 12(f) to "'avoid the expenditure of time and money that arises from litigating those spurious issues prior to trial.'" *Stearns*, 763 F.Supp.2d at 1139-40 (quoting *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)).

### C.     Failure To State A Claim Under Rule 12(b)(6)

On a motion to dismiss, the Court should "accept as true all of the factual allegations contained in the complaint, and review the complaint to determine whether its allegations show that the pleader is entitled to relief." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (a complaint must contain sufficient allegations to "state a claim for relief that is plausible on its face").  A claim is plausible on its face if its factual allegations allow a court to reasonably infer liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (factual allegations must present more than "the mere possibility of misconduct" or a "sheer possibility that a defendant has acted unlawfully"); *Twombly*, 550 U.S. at 544, 555, 570 (Rule 12 requires factual

allegations that "raise a right to relief above the speculative level" and push claims "across the line from conceivable to plausible").

The Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences, and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Servs. of Am. v. Am. State Bank*, 339 F.3d 764, 767 (8th Cir. 2003). Dismissal is proper where the allegations of the complaint are limited to "a formulaic recitation of the elements of a cause of action." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). "Conclusory statements and naked assertion[s] devoid of further factual enhancement are insufficient." *Retro TV Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 769 (8th Cir. 2012) (quotations and alterations omitted). Rule 12(b)(6) allows dismissal based on a dispositive legal issue. *T. B. Allen & Assocs., Inc. v. Euro-Pro Operating LLC*, No. 11-3479 (JRT/JSM), 2013 U.S. Dist. LEXIS 1414, at *5 (D. Minn. Jan. 4, 2013) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).

### D.   Pleading Fraud Under Rule 9(b)

Rule 9(b) requires "all averments of fraud" to be pleaded with particularity. "[C]onclusory allegations that a defendant's conduct was fraudulent . . . are not sufficient to satisfy the rule." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citation omitted). Thus, a plaintiff must plead the "circumstances constituting fraud, including such matters as the time, place and contents of false representations, as well as the identity of the person making the representation and what was obtained or given up thereby." *Id.* (quoting Rule 9(b) and *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (9th Cir. 2001)). In short, to meet Rule 9(b), a plaintiff must plead the

"who, what, where, when, and how of the alleged fraud." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (internal quotation marks omitted); *accord United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003).

## IV.   DISCUSSION

### A.    The Court Lacks Jurisdiction To Decide Plaintiffs' Claims

This action should be dismissed for failure to meet the Court's subject matter and personal jurisdiction requirements.

#### 1.    The Court has no Subject-Matter Jurisdiction

Under CAFA, jurisdiction exists only where the amount in controversy exceeds $5,000,000 and there is diversity of citizenship between any plaintiff class member and the defendant.  28 U.S.C. §1332(d)(2)(A).  Assessing Plaintiffs' claims on an individual basis would likewise require diversity of citizenship between Plaintiffs and K&N and an amount in controversy for each individual claim that exceeds $75,000.  28 U.S.C. §1332(a).  Plaintiffs' claims do not meet either standard.

As the Williams Declaration demonstrates, the number of consumers who have experienced a defective KN-204 filter totals 128, which represents less than one-tenth of one percent of the 134,674 filters sold in the United States during the operative time period.  (Williams Decl. at ¶7, Ex. B.)  Specifically, as of November 6, 2017, K&N had received a total of 85 claims from consumers reporting defects in their KN-204 filters.  (Williams Decl., Ex. B.)   K&N subsequently received 43 more claims of reported failures, bringing the total to 128.  (Williams Decl. at ¶7.)  Retail prices for the KN-204

range from $10 to $16.  (*Id.* at ¶12.)  K&N's Warranty applies to Plaintiffs' purchases and provided replacement and repair remedies for any defective filter or damaged engine or equipment.  (*Id.* at ¶3.)  K&N has never refused to pay a documented Warranty claim relating to any powersports oil filter, including a KN-204.  (*Id.* at ¶15.)  Specifically, K&N has paid, or caused to be paid, all KN-204 Warranty claims presented to it except for 24 claims for which consumers failed to supply K&N the information/documentation necessary to evaluate and process those claims.  (*Id.* at ¶16.)

Calculating the putative class members' losses based on the $15.99 price listed on K&N's website multiplied by the total number of units sold nationwide -- which ***far exceeds the actual number of filters that failed*** and includes filters that remained in dealer and distributor inventories and never reached consumers -- would total $2,153,437.26 in maximum damages available to a nationwide class under an unrealistically liberal scenario, which still falls well short of the $5 million required by CAFA.  More realistically, the aggregate purchase price for a hypothetical 1% of filters that failed (more than ten times the actual defect rate based on the failures reported to K&N) would total ***$21,534.37***.  When based on the ***actual failure rate***, the total loss is ***$2,046.72***.  Notably, these calculations ***include*** consumers whose claims would be barred because the defect in their product did not result in any physical injury or property loss beyond the purchase price.  In any case, whether the most conservative or the most liberal approach is adopted, the resulting number falls far short of the amount required to maintain an action in this Court.

It is also important to note that most of the KN-204 filters sold (over 99.9%) performed as warranted or were returned to K&N under the recall without having failed or having been used.  As K&N's Quarterly Recall Report for the fourth quarter of 2018 reflects, tens of thousands of filters subject to the recall were returned and either replaced or a refund was issued.  (Williams Decl., Ex. C.)[5]  For the five quarterly reporting periods since the recall was initiated until this action was filed, fewer than 200 consumers were deemed "unreachable" on the grounds that owner notifications were unable to be delivered.  (*Id.*)  To the extent a consumer's KN-204 filter manifested a defect and that consumer submitted a claim with supporting information (such as receipts, repair estimates and photos), that claim was paid and any possible loss was remedied.  (Williams Decl. at ¶15.)  Couple this information with the fact that motorcycle oil filters are used and regularly discarded during routine maintenance and the fact that the number of recalled filters returned each quarter has declined significantly since the second quarter of 2018 and the clear indication is that few (if any) recalled filters remain in use.  (Williams Decl. at ¶¶8, 13, Ex. C (reflecting 5,930 filters in the first quarter of 2018, 1,308 filters in the second quarter of 2018, 436 filters in the third quarter of 2018, 160 filters in the fourth quarter of 2018), ¶10 (reflecting that in January 2019, 41 filters were returned from a dealer's inventory pursuant to the recall, meaning they never reached consumers).)  The limited number of reported defects and the number of filters already returned/replaced means that, even if the amount in controversy were in excess of $5

---

[5] The total number of recalled oil filters returned through the fourth quarter of 2018 was 12,990.  (Williams Decl., Ex. C.)

million (and it is not even close to that amount), Plaintiffs cannot establish that there are the 100 putative class members necessary for the Court to exercise jurisdiction over the putative class action.  *See* 28 U.S.C. § 1332(d)(5)(B).[6]

Plaintiffs' claims suffer from the same jurisdictional deficiencies when they are considered on an individual basis.  Even accepting for argument's sake that Plaintiffs' claims are otherwise properly before the Court (and they are not), Plaintiffs' recovery is limited to the terms of the Warranty and the remedies available through the KN-204 recall.  And even if they were not so limited, the damages pleaded for the failure of a $16 oil filter cannot come close to $75,000.  Thus, no matter how one tries to calculate the claimed damages in this case, which is especially difficult given the fatally vague allegations in the complaint, Plaintiffs' individual claims simply cannot meet the amount-in-controversy requirement.

Because the Court lacks subject matter jurisdiction over Plaintiffs' claims, the action should be dismissed.

### 2. There is no Personal Jurisdiction over K&N as to Certain Claims

The Court must have personal jurisdiction over K&N to adjudicate claims against it and "[p]ersonal jurisdiction in class actions must comport with due process just the same as any other case."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011); *In re Dental Supplies Antitrust Litig.*, No. 16 Civ. 696 (BMC), 2017

---

[6] To the extent Plaintiffs' proposed class definitions are broader than characterized here, K&N maintains that they are improper and should be stricken.

U.S. Dist. LEXIS 153265, at *37 (E.D.N.Y. Sept. 20, 2017).   Absent exceptional circumstances not present here, general jurisdiction requires that K&N be incorporated or have its principal place of business in Minnesota.   *Daimler AG v. Bauman,* 134 S. Ct. 746, 761-62 (2014); *BNSF Ry. v. Tyrell*, 137 S. Ct. 1549, 1559 (2017); *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1778 (2017).   Because K&N is incorporated and has its principal place of business in California (Dkt. 1 at ¶33), this Court lacks general jurisdiction over K&N.   Accordingly, Plaintiffs must establish *specific* personal jurisdiction over K&N relating to their claims.   They cannot do so with respect to non-Minnesota claims, which means that the non-Minnesota plaintiffs' claims and the nationwide class must fail as a matter of law.

The U.S. Supreme Court's decision in *Bristol-Myers* precludes exercising specific jurisdiction over K&N with respect to the claims based on actions occurring outside of Minnesota; namely, the non-Minnesota plaintiffs' and putative class members' alleged purchases of K&N's filters, any manifestation of a defect in those filters and (to the extent they suffered any injury) any alleged damages.   *See* 137 S. Ct. at 1782 (specific jurisdiction may not be asserted over a nonresident defendant for nonresident plaintiffs' claims because "the conduct giving rise to their claims occurred elsewhere"); *Moore v. Bayer Corp.*, No. 4:18 CV 262 CDP, 2018 U.S. Dist. LEXIS 147020, at *4-5 (E.D. Mo. Aug. 29, 2018) (dismissing non-Missouri plaintiffs' claims as "too attenuated for this court to exercise personal jurisdiction over Bayer").   *Bristol-Myers* instructs that, when a court "lacks personal jurisdiction over the claims of putative class members with no connection to [Minnesota, it] therefore would not be able to certify a nationwide class."

*Wenokur v. Axa Equitable Life Ins. Co.*, No. CV-17-00165-PHX-DLR, 2017 U.S. Dist. LEXIS 162812, at *12 n.4 (D. Ariz. Oct. 2, 2017).   On this basis, multiple courts in the Eighth Circuit and nationally have dismissed nonresident claims for lack of jurisdiction pursuant to *Bristol-Myers*.   *See, e.g.*, *Moore*, 2018 U.S. Dist. LEXIS 147020, at *4; *Johnson v. Bayer*, No. 4:17-CV-02774-JAR, 2018 U.S. Dist. LEXIS 27480, at *9 (E.D. Mo. Feb. 21, 2018) ("the individual plaintiffs' claims are too attenuated from those activities to provide specific, 'case-linked' personal jurisdiction"); *see also Chavez v. Church & Dwight Co.*, No. 17 C 1948, 2018 U.S. Dist. LEXIS 82642, at *32 (N.D. Ill. May 16, 2018) (dismissing nationwide and multistate class claims by non-Illinois residents).

Given these precedents, it is clear the alleged harm suffered by any putative class members must be linked to activity in Minnesota.   There is no such link for Erpenbach and Welsh, for all non-Minnesota members of Plaintiffs' putative nationwide class or for the putative Oregon and Missouri classes that Erpenbach and Welsh purport to represent. Each purchase relevant to those claims was made by foreign consumers outside of Minnesota and each alleged injury happened outside of Minnesota.   Absent a direct link to Minnesota, there is no basis for personal jurisdiction and the Court must dismiss the claims of all nonresident plaintiffs and putative class members.   *See Greene v. Mizuho Bank Ltd.*, 289 F.Supp.3d 870, 875-77 (N.D. Ill. 2017); *McDonnel v. Nature Way Prods., LLC*, No. 16 C 5011, 2017 U.S. Dist. LEXIS 177892, at *10-13 (N.D. Ill. Oct. 26, 2017) (dismissing claims of nonresident class members where the only connection to the forum state was the named plaintiff's purchase); *Plumbers' Local Union No. 690 Health Plan v.*

17

*Apotex Corp.*, No. 16-665, 2017 U.S. Dist. LEXIS 114733, at *34 (E.D. Pa. July 24, 2017).[7]

Accordingly, even if the Court finds that it has subject matter jurisdiction, and it should not, the Court should (1) dismiss all non-Minnesota claims asserted in the complaint on behalf of Welsh and Erpenbach, including claims under the Missouri Merchandising Practices Act, the Oregon Unlawful Trade Practices Act and the Oregon-specific implied warranty, (2) strike the nationwide class allegations and (3) strike the Oregon and Missouri class allegations.

## B.    Plaintiffs' Case Cannot Proceed As A Class Action

Even if the Court could assert jurisdiction over the subject matter of this action or over K&N, Plaintiffs' claims cannot proceed as a matter of law on a class basis because (1) class treatment is inappropriate where (a) assessing putative class members' alleged damages, if any, would require an individualized inquiry and (b) putative class members' claims may be subject to different warranty terms, such that typicality and commonality are lacking, and (2) Plaintiffs' class definitions purport to include (a) all purchasers, whether consumers or not, of the specified products regardless of whether the products

---

[7] While one court in this District declined to consider unnamed putative class members in assessing personal jurisdiction, that case is distinguishable because here, specific personal jurisdiction is lacking over the non-Minnesota named plaintiffs. *See Knotts v. Nissan N. Am., Inc.*, No. 17-cv05049 (SRN/SER), 2018 U.S. Dist. LEXIS 175334, at *44 & n.6 (D. Minn. Oct. 10, 2018) (acknowledging that *Bristol-Myers* "requires a finding of specific personal jurisdiction with respect to unnamed members of a putative class action" but distinguishing relevant Ninth Circuit case law on ground that specific jurisdiction existed over the only named plaintiff). Even if the Court declines to consider the unnamed putative class members in assessing personal jurisdiction (and it should not), the Court should dismiss the Oregon and Missouri Plaintiffs and putative classes.

failed or they suffered any damage and (b) two models of oil filters that Plaintiffs never

purchased and for which K&N never issued a recall.

### 1.   Typicality and Commonality are Lacking

#### a.  Determining Damages Would Require Individualized Fact Issues

Plaintiffs' claims are not appropriate for class treatment because Plaintiffs'

allegations establish there is no class-wide method for determining damages or

entitlement to recovery.  Plaintiffs do not -- and cannot -- allege that a defect manifested

in each oil filter sold or that those filters that did fail actually caused damage to any

property other than the three Plaintiffs or did so beyond an economic loss.  And with

respect to the price of the filters, the proposed class members cannot establish that they

paid the same price for each filter so an individual determination of the amount of each

claimant's loss would need to be made on a purchase-by-purchase basis.  Such individual

issues frustrate the purpose of a class action, which is intended to address all claims and

all damages without having to determine individual fact issues.  *Buetow v. A.L.S. Enter.,*

*Inc.*, 259 F.R.D. 187, 193 (D. Minn. 2009) (denying class certification due to

individualized issues); *Bennett v. Roberts*, No. 96 C 6917, 2000 U.S. Dist. LEXIS 1693,

at *11 (N.D. Ill. Feb. 14, 2000) ("These varied and individualized factual issues would

frustrate the purpose of the class action device to promote efficiency, requiring instead a

series of time-consuming mini trials").  Dispositively, each Plaintiff asserts different

circumstances and purported loss resulting from an alleged defect in an oil filter; the

complaint plainly alleges that each Plaintiff incurred different damages.  Plaintiffs' only

alleged support for typicality is that they, like each member of the putative class, purchased KN-204 oil filters (coupled with the unsupported allegation that the class members all suffered damages), which is patently insufficient to plead a class action. (Dkt. 1 at ¶78.)

Further, to the extent any putative class member's filter failed, K&N offered that individual a remedy through the recall and/or the Warranty and many (if not virtually all) of those consumers took advantage of that remedy. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982) (a class representative must have the same interests and same injury as the entire class). As the complaint alleges, Penrod rejected the remedy that K&N offered, which is the amount that Penrod had demanded from K&N, and Erpenbach and Welsh never sought any recourse before suing. (Dkt. 1 at ¶14.)

Moreover, the KN-204 fits non-motorcycle applications, including personal watercraft (*e.g.*, jet skis) and off-road or all-terrain vehicles (ATVs). (Williams Decl. at ¶14.) These other possible engine, vehicle and vessel applications do not pose the same risk to consumers or type of damage if a filter fails. (*Id.*) While K&N recalled all 134,674 KN-204 filters sold in the United States regardless of their intended use, the NHTSA recall only applies to vehicles intended for use on a highway, such as Plaintiffs' motorcycles. (*Id.*) Because Plaintiffs do not limit their putative class definitions to motorcycles or even land vehicles (Dkt. 1 at ¶74), these different applications would create individualized fact and damages issues undermining typicality and commonality.

For all of these reasons, the class allegations should be stricken.

**b. Putative Class Members' Claims are Subject to Different Warranty Terms**

K&N's Warranty terms were modified in or around January 2018. (Williams Decl. at ¶4.) Accordingly, while certain terms applied to the named Plaintiffs' purchases allegedly occurring in April and June 2017, different Warranty terms would apply to other putative class members' purchases if they were made after the new Warranty language was effective. (Williams Decl. at ¶¶3-4, Ex. A.)

The new Warranty states: "WE LIMIT THE DURATION AND REMEDIES OF ALL IMPLIED WARRANTIES, INCLUDING, WITHOUT LIMITATION, THE WARRANT[Y] OF MERCHANTABILITY . . . TO THE DURATION OF THIS EXPRESS LIMITED WARRANTY." (Williams Decl., Ex. A.) For the avoidance of doubt, the Warranty's Limitation of Liability states "THE REMEDIES DESCRIBED ABOVE ARE YOUR SOLE AND EXCLUSIVE REMEDIES AND OUR ENTIRE LIABILITY FOR ANY BREACH OF THIS LIMITED WARRANTY." (*Id.*) Accordingly, the recovery available for putative class members' purchases governed by the new Warranty language would be different from the recovery available to the Plaintiffs, which further undermines commonality and demonstrates that this case is not suitable for class treatment. *See Hart v. Louisiana-Pacific Corp.*, 641 Fed. App'x 222, 232-33 (4th Cir. 2016) (affirming class decertification because "multiplicity of warranties undermine[d] typicality").

## 2.   The Class Allegations are Overbroad

Plaintiffs purport to assert claims on behalf of "[a]ll persons or entities" -- either in the United States or, alternatively, in Minnesota, Missouri and Oregon -- "that purchased a KN138, KN204, and/or KN303 Oil Filter."  (Dkt. 1 at ¶¶73-74.)  These definitions preclude class certification as a matter of law.

First, Plaintiffs' class definitions fail because they purport to include any purchaser of three models of K&N filters without regard to whether the purchaser was a consumer and the alleged defect actually manifested in any putative class member's filter and regardless of whether, if a defect did manifest, any damages were incurred. Plaintiffs' proposed class consists not merely of consumers whose filters failed but of ***all purchasers*** of the identified filters even if they performed as warranted (including the KN-138 and KN-303 models that Plaintiffs did not purchase and were not recalled).  As pled, the putative class includes thousands of consumers and non-consumers with no conceivable claim.  The Court should therefore strike Plaintiffs' class claims because they encompass purchasers who lack standing to bring a claim against K&N.  *See O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009) ("It is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own").

Second, the class definitions fail because the complaint alleges that Plaintiffs purchased only KN-204 oil filters; the complaint does not plead that any of the Plaintiffs purchased either of the other two filters.  A plaintiff in a consumer class action cannot represent putative class members who did not purchase the same product that she or he

did. *Ferrari v. Best Buy Co.*, No. 14-2956 (MJD/FLN), 2015 U.S. Dist. LEXIS 61988, at *21 (D. Minn. Mar. 13, 2015) ("Plaintiff lacks standing to assert claims on behalf of the class for televisions that he did not purchase or advertising that he did not see or rely upon"); *Chin v. General Mills, Inc.*, No. 12-2150 (MJD/TNL), 2013 U.S. Dist. LEXIS 77345, at *7-10 (D. Minn. May 31, 2013) (dismissing claims to the extent they sought relief based on products that plaintiffs did not purchase); *see also Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F.Supp.2d 529, 537 (D.N.J. 2011) (dismissing claims in a class action as to products plaintiff did not purchase).[8]

### C.   Plaintiffs Cannot Plead Breach Of An Express Warranty

An express warranty is created by "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain."  Minn. Stat. § 336.2-313(1)(a).  "Under Minnesota law, an express warranty arises when a seller makes an affirmation about a product that becomes part of the basis of the bargain between the parties."  *Daigle v. Ford Motor Co.*, 713 F.Supp.2d 822, 825 (D. Minn. 2010) (citing Minn. Stat. Ann. § 336.2-313 (West 2010)).   "The word 'warranty' need not be used so long as a clear representation of the quality of a thing sold is made by a seller to the buyer as part of a contract for sale and the buyer relied upon the statement."  *McGregor v. Uponor, Inc.*, No. 09-1136 ADM.JJK, 2010 U.S. Dist. LEXIS 162, at *27 (D. Minn. Jan. 4, 2010).

---

[8] Plaintiffs fail to make any allegations regarding consumers' purchases of the KN-138 and KN-303 filters or the denial of any warranty claims relating to any alleged failures of those filters.

Here, Plaintiffs assert a claim for breach of express warranty based on alleged assurances "that the Oil Filters were of high quality and, at a minimum, would work properly." (Dkt. 1 at ¶150.)  Such vague statements cannot create an express warranty under Minnesota law.  "The advertisements that have been found to constitute express warranties contain very specific claims and promises as to how a certain product will perform." *Masepohl v. Am. Tobacco Co.*, 974 F.Supp. 1245, 1252-53 (D. Minn. 1997) (declining to find an express warranty in advertisements and promotional materials containing broad claims about product quality).  Moreover, even if the alleged statements by K&N could constitute an express warranty, and they cannot, Penrod does not allege that he reviewed or relied on any statement in any advertising materials in purchasing oil filters.  *See Daigle*, 713 F.Supp.2d at 825; *McGregor*, 2010 U.S. Dist. LEXIS 162, at *27.[9]

---

[9] While Erpenbach alleges he "conducted research" on K&N's "positive reputation" prior to purchasing a K&N filter, he does not allege that he read or relied on materials that supposedly provided a warranty by K&N or that any of his research revealed any statements by K&N.  *See Elfaridi v. Mercedes-Benz USA, LLC*, No. 4:16 CV 1896 CDP, 2018 U.S. Dist. LEXIS 145196, at *21-22 (E.D. Mo. Aug. 27, 2018) (rejecting express warranty claim where "plaintiff does not sufficiently allege the advertisements constituted an affirmation or statement by Daimler that became a basis of the bargain"); *Gannon Joint Venture Ltd. P'ship v. Masonite Corp.*, No. 4:07CV1242 JCH, 2008 U.S. Dist. LEXIS 39038, at *11 (E.D. Mo. May 14, 2008) (plaintiffs could not demonstrate advertising induced a purchase where plaintiffs did not allege they read the advertising at issue prior to their purchase).  In any event, as addressed *supra*, Erpenbach's claims are barred on jurisdictional grounds.

Because the complaint cannot allege a breach of any express warranty, this claim should be dismissed.[10]

### D.   The Consumer Fraud And False Advertising Claims Fail As A Matter Of Law

The Court should dismiss Penrod's third cause of action under the Minnesota Consumer Fraud Act ("MCFA") and fourth cause of action under the Minnesota False Statement in Advertising Act ("MFSAA") because they rely on the same fundamentally flawed theory that vague advertising statements give rise to a claim for damages under Minnesota law.

### 1.   Penrod Lacks Standing under the Consumer Protection Statutes

Because the MCFA does not provide a private right of action, Penrod can only assert his claim pursuant to the Private Attorney General Statute.  Minn. Stat. §8.31, subd. 3a; *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 11 F.Supp.3d 933, 937 (D. Minn. 2014) (the MCFA is covered by Private Attorney General statute).  "[P]ublic benefit is a necessary *element* of a plaintiff's cause of action under the private AG statute." *Buetow v. A.L.S. Enter., Inc.*, 888 F.Supp.2d 956, 959 (D. Minn. 2012) (original emphasis).  "[T]he Private AG Statute applies only to those claimants who demonstrate that their cause of action benefits the public." *Ly v. Nystrom*, 615 N.W.2d 303, 314

---

[10]  Plaintiffs do not allege that K&N refused to pay any claims that were presented to it or otherwise breached the Warranty.  Penrod alleges that he was offered a full refund (and more) and declined it.  (Dkt. 1 at ¶14.)  While Erpenbach alleges that he tried to call and did not reach K&N, he does not allege that he ever submitted a claim or that any claim was denied by K&N.  (*Id.* at ¶22.)  Welsh did not even try to contact K&N.  (*See id.* at ¶¶26-31.)

(Minn. 2000).  General and conclusory allegations that the public would benefit from the action are insufficient.  *Select Comfort*, 11 F.Supp.3d at 939.

Penrod fails to allege a public benefit from this action and, even if he sufficiently alleged such a benefit, the facts stated in the complaint undermine such a theory in any event.  Relief for the public benefit seeks to alter alleged wrongful conduct, not merely seek damages to benefit an individual plaintiff.  *Id.* at 937-38; *Buetow*, 888 F.Supp.2d at 960.  While the complaint purports to seek injunctive relief, it seeks "an order that requires Defendant to recall and/or replace the Oil Filters and to extend the applicable warranties to a reasonable period of time," a remedy that, by Plaintiffs' own allegations, K&N has already provided through its recall.

Penrod's MCFA and MFSAA claims allege that K&N's actions "are likely to deceive the public" (Dkt. 1 at ¶¶111, 119) but ignore the fact that K&N's recall (alleged elsewhere in the complaint) necessarily disclosed the possible defect to consumers and the public at large.  No public benefit is conferred by an action that addresses only past acts.  *Milavetz, Gallop & Milavetz, P.A. v. Wells Fargo Bank, N.A.*, No. 12-CV-0875 (MJD/JJG), 2012 U.S. Dist. LEXIS 131628, at *15 (D. Minn. Aug, 22, 2012).  All Penrod seeks to accomplish by this lawsuit is to obtain money for his alleged losses, compensation he was already offered and he rejected.  Under such circumstances, the consumer protection claims should be dismissed.

### 2.  Penrod's Consumer Protection Claims Also Fail under Rule 9(b)

Because the MCFA and MFSAA allow a cause of action sounding in fraud, Penrod must plead these claims in accordance with Rule 9(b).  *McGregor v. Uponor,*

*Inc.*, No. 09-1136 ADM.JJK, 2010 U.S. Dist. LEXIS 162, at *7-8 (D. Minn. Jan. 4, 2010) (citing cases applying Rule 9(b) to MCFA and MFSAA claims); *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783-84 (8th Cir. 2009) (affirming dismissal of class allegations due to the failure to comply with Rule 9(b)).  Penrod's Minnesota consumer protection claims fail to meet this heightened standard and should therefore be dismissed.

Penrod's MCFA claim vaguely states that K&N "has engaged in fraud and deceptive trade practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff Penrod and the Minnesota Class Members that the Oil Filters suffer from a defect (and the costs, safety risks, and diminished value of the Oil Filters as a result of these problems)."  (Dkt. 1 at ¶109.)  That claim does not identify the specific "conduct, statements, and omissions" on which it relies, as Rule 9(b) requires.  While the complaint cites vague advertising statements in support of an MFSAA claim, its allegations are conclusory and fail to supply the requisite "who, what, when, where and why" necessary to state a fraud claim.  *Thunander v. Uponor, Inc.*, 887 F.Supp.2d 850, 876 (D. Minn. 2012) (dismissing MCFA and MFSAA claims for failure to abide by Rule 9(b) because the complaint offered only "conclusory statements referring to [defendant's] fraudulent, misleading and deceptive statements and practices").

To the extent Penrod's MCFA and MFSAA claims seek to rely on alleged omissions, they likewise fail to allege any omission with the particularity required by Rule 9(b).  Dismissal of such claims is appropriate.  *See Vaith v. GM, LLC*, No. 18-cv-031 (JRT/HB), 2018 U.S. Dist. LEXIS 121665, at *22-23 (D. Minn. June 28, 2018)

(dismissing MCFA claim under Rule 9(b) for failure to plead with particularity).

### 3.   Penrod's Consumer Claims Rely on Statements that are Puffery

Penrod's consumer fraud and false advertising claims further fail because the challenged statements alleged in the complaint are non-actionable puffery.   "Puffery exists in two general forms:  (1) exaggerated statements of bluster or boast upon which no reasonable consumer would rely; and (2) vague or highly subjective claims of product superiority, including bald assertions of superiority." *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 390-91 (8th Cir. 2004).  Praising a product, especially in broad and vague language, is considered puffery and is not actionable under Minnesota's consumer protection statutes. *LensCrafters, Inc. v. Vision World*, 943 F.Supp. 1481, 1489 (D. Minn. 1996).

To be actionable, statements must be specific, measurable and "reasonably interpreted as a statement of objective fact." *Browe v. Evenflo Co.*, No. 14-4690 ADM/JJK, 2015 U.S. Dist. LEXIS 82540, at *13-14 (D. Minn. June 25, 2015) (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999)).  Product claims can violate these statutes only if they make statements of fact about specific, absolute and definitive characteristics of the product that are demonstrably false. *LensCrafters*, 943 F.Supp. at 1489; *Semanko v. Minn. Mut. Life Ins. Co.*, 168 F.Supp.2d 997, 1000 (D. Minn. 2011).  Prohibited statements include, for instance, measurable claims of superiority to other products based on testing. *United Inds. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998).  Puffery is an issue of law and is

therefore an appropriate basis for a motion to dismiss.  *LensCrafters*, 943 F.Supp. at 1489.

The *Browe* court granted a motion to dismiss an MCFA claim relying on statements including "easy to get your child in and out of the [car] seat," on the grounds that "easy" was "subjective, vague, and wholly dependent on an individual's interpretation, and lacks an empirical benchmark to provide any indicia of measurability."  2015 U.S. Dist. LEXIS 82540, at *14; *McAteer v. Target Corp.*, No. 18-349 (DWF/LIB), 2018 U.S. Dist. LEXIS 124923, at *10 (D. Minn. July 26, 2018) (advertising statements that makeup remover wipes were "ultra soft" and "gently remove[] makeup" were "non-specific, unquantifiable, and subjective").  The same is true of the claims on which Penrod relies.

Penrod's MCFA and MFSAA claims depend on advertising statements that K&N's oil filters are capable of withstanding "high demands" and "extreme conditions," are designed for "ultimate flow" and "outstanding filtration," can handle "heavy duty applications" and will add "increased performance."  (Dkt. 1 at ¶¶4, 47-49.)  These claims reflect the same type of general puffery about the product's performance and superiority at issue in *Browe*.  Generally, descriptors such as "high," "extreme," "ultimate" and "outstanding" cannot be quantified or measured but depend entirely on a consumer's subjective interpretation.  Indeed, the non-specific nature of such claims is demonstrated by the fact that they do not even relate to the oil filter model that Penrod purchased.  Instead, these representations on K&N's website pertain to its oil filters

generally.        (Dkt.    1    at    ¶¶47-51    and    n.7-11    (citing    to https://www.knfilters.com/oil_filters.aspx).)

## V.    CONCLUSION

Plaintiffs allege that K&N's oil filters were defective but concede that, when K&N received notice of the potential issue, it investigated the defect, promptly submitted a Recall Report to NHTSA and implemented a recall offering purchasers a full replacement or refund.  For the *less than one-tenth of one percent* of the oil filters sold in the United States that actually failed, remedies were available from K&N outside of litigation and the vast majority of consumers who purchased a recalled KN-204 oil filter have already submitted warranty or recall claims and have been compensated in full.  Plaintiffs, who apparently refused to abide by this process notwithstanding that it was available to them, are the exception and cannot represent a sufficient number of putative class members or establish the amount in controversy to meet this Court's jurisdictional requirements. Because Plaintiffs' claims cannot meet the requirements, subject matter jurisdiction is lacking.  Even if the Court possessed jurisdiction over the suit generally, the Court could not hear the claims of Oregon and Missouri plaintiffs because they lack a connection to Minnesota sufficient to confer personal jurisdiction over K&N.

And even if the Court could exercise jurisdiction over Plaintiff's claims, those claims would still fail.  Determining damages for each putative class member would require an individualized inquiry, one that would result in no damages beyond an economic loss.  Different putative class members' claims would be subject to different Warranty terms, which further undermines typicality and commonality.   Indeed,

Plaintiffs' putative class definitions are improper because they purport to include ***any purchaser*** of three K&N oil filter models, where (1) each Plaintiff only purchased one of the three models, (2) the majority of the filters never exhibited a defect and performed as warranted and (3) the class definitions encompass all purchasers, including consumers who suffered no damages and dealers and distributors.  Such claims cannot stand.

Finally, the Court should alternatively dismiss any remaining claims for failure to state a claim under Rules 9(b) and 12(b)(6).  Under the law and the facts as alleged by Plaintiffs, remedies were available to all putative class members pursuant to K&N's warranty and KN-204 recall.  Plaintiffs fail to assert a viable express warranty claim based on the statements identified in the complaint and do not allege any breach of the operative warranty.  And Plaintiffs' Minnesota consumer protection claims fail because they (1) are not in the public interest, (2) fail to meet Rule 9(b) and (3) do not allege any actionable misstatement by K&N.

Accordingly, K&N respectfully requests that the Court dismiss this case in its entirety and with prejudice.  In the alternative, and at a minimum, K&N requests that the Court strike the class allegations from Plaintiffs' complaint and enter an order that any claims by Plaintiffs or putative class members must be brought, if at all, on an individual basis, subject to satisfying the amount-in-controversy threshold for diversity jurisdiction.

Dated:  January 18, 2019          By:   /s/ Mark C. Goodman
                                  Mark C. Goodman - Admitted *Pro Hac Vice*
                                  CA State Bar No. 154692
                                  Anne M. Kelts - Admitted *Pro Hac Vice*
                                  CA State Bar No. 298710
                                  Attorneys for Defendant K&N Engineering, Inc.
                                  BAKER & McKENZIE LLP
                                  Two Embarcadero Center, Suite 1100
                                  San Francisco, CA  94111
                                  Telephone:  415-576-3000
                                  Facsimile:  415-576-3099
                                  Email:       mark.goodman@bakermckenzie.com
                                               anne.kelts@bakermckenzie.com

                                  Amanda M. Cialkowski        Reg. No. 306514
                                  Leah N. Kippola-Friske       Reg. No. 395467
                                  Attorneys for Defendant K&N Engineering, Inc.
                                  NILAN JOHNSON LEWIS PA
                                  120 South Sixth Street, Suite 400
                                  Minneapolis, MN  55402
                                  Telephone:  612-305-7500
                                  Facsimile:  612-305-7501
                                  Email:       acialkowski@nilanjohnson.com
                                               lkippola-friske@nilanjohnson.com