| | |
|---|---|
| John Penrod, Gus Erpenbach, and Juan Welsh, individually and on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>K&N Engineering, Inc.,<br><br>       Defendant. | File No. 18-cv-02907 (ECT/LIB)<br><br><br>**OPINION AND ORDER** |

Matthew D. Schelkopf and Joseph B. Kenney, Sauder Schelkopf LLC, Berwyn, PA; Daniel E. Gustafson, Daniel C. Hedlund, Catherine K. Smith, and Ling S. Wang, Gustafson Gluek PLLC, Minneapolis, MN; and David C. Wright, McCune Wright Arevalo LLP, Ontario, CA, for plaintiffs John Penrod, Gus Erpenbach, and Juan Welsh.

Mark C. Goodman and Anne M. Kelts, Baker McKenzie LLP, San Francisco, CA; and Amanda M. Cialkowski and Leah N. Kippola-Friske, Nilan Johnson Lewis PA, Minneapolis, MN, for defendant K&N Engineering, Inc.

---

Plaintiffs filed this case in federal district court seeking to represent a nationwide class—or, alternatively, state-specific classes—of persons who sustained damages caused by Defendant's allegedly defective oil filters. Plaintiffs assert only state-law claims and allege there is subject-matter jurisdiction over this case on the basis of the Class Action Fairness Act ("CAFA"). Defendant K&N Engineering seeks dismissal of the case on several grounds, including that Plaintiffs' claims do not satisfy CAFA's $5 million amount-in-controversy threshold. Because Plaintiffs' complaint does not allege facts plausibly establishing this jurisdictional requirement, the complaint will be dismissed. Plaintiffs will be permitted to file an amended complaint.

I

Plaintiffs—three individuals from Minnesota, Missouri, and Oregon—allege that K&N designs and sells defective engine-oil filters for use in motorcycles and powersport vehicles (like jet skis and ATVs). Compl. ¶¶ 1, 11, 18, 26 [ECF No. 1]; Williams Decl. ¶ 2 [ECF No. 19] (clarifying that K&N does not manufacture oil filters). Plaintiffs allege specifically that three models of K&N filters (the KN-138, KN-204, and KN-303) share "a structural and manufacturing defect whereby they can suddenly separate or fracture causing pressurized and hot engine oil to erupt and spill onto the person, engine, components, tires, and riding surfaces." Compl. ¶¶ 2–3. At the very least, Plaintiffs allege, this "separation defect" renders the oil filter unusable; at worst, the defect can result in "engine fires, engine failures, vehicle crashes, personal injuries, and other economic damages." *Id.* ¶ 3; *see also id.* ¶ 45 ("Typically, on motorcycles, oil filters are located directly in front of the rear tire. Because of the placement, an oil filter failure can result in an immediate loss of traction to the rear tire and cause a serious accident.").

Plaintiffs do not identify when these oil filters entered the market, but allege that "Defendant has long known, since at least 2014, that the Oil Filters are defective." *Id.* ¶ 53. Plaintiffs describe in their complaint how K&N initiated a voluntary recall in August 2017. *Id.* ¶¶ 63, 68–69. The recall was limited to the KN-204 model and implicated seven months' worth of filters—those manufactured between March 1, 2016, and September 30, 2016. *Id.* ¶ 69. K&N offered as part of the recall to "replace the affected oil filters at no charge." *Id.* Plaintiffs also allege that around this same time, K&N modified the filter design, "revis[ing] the shape of the removal nut and canister end to improve the mating of

the two components" in order to address "improper welding of the nut to the canister" at the location where oil would leak. *Id.* ¶¶ 67, 69.

Plaintiffs, all motorcycle owners who used the KN-204 model filter, allege that their oil filters failed around or after the time of the recall (July 2017, April 2018, and July 2018). *See id.* ¶¶ 12–13, 19–20, 27–28. Plaintiffs Penrod and Erpenbach experienced failures resulting in oil spillage; Plaintiff Welsh experienced oil spillage and engine failure. *See id.* ¶¶ 13, 20, 28. K&N offered Penrod $300 to compensate him, but Penrod declined; Erpenbach attempted to contact K&N, but was unable to do so; the complaint does not allege that Welsh ever contacted K&N or that any Plaintiff participated in the recall. *Id.* ¶¶ 14, 22, 26–31.

Plaintiffs seek to represent a nationwide class of "[a]ll persons or entities in the United States that purchased a KN138, KN204, and/or KN303 Oil Filter." *Id.* ¶ 73. Alternatively, they seek to represent three subclasses of Minnesota, Missouri, and Oregon purchasers. *Id.* ¶ 74. Plaintiffs assert claims for negligence (*id.* ¶¶ 82–89), strict liability for a product defect and failure to warn (*id.* ¶¶ 90–103), breach of express warranty (*id.* ¶¶ 149–155), breach of implied warranty (*id.* ¶¶ 156–161), and violation of various state consumer-protection statutes (*id.* ¶¶ 104–48). Plaintiffs seek an "award [of] all actual, general, special, incidental, statutory, and consequential damages and restitution," as well as attorneys' fees, but do not seek punitive damages at this time. *Id.* at 37–38. They also seek injunctive relief including "an order that requires Defendant to recall and/or replace the Oil Filters and to extend the applicable warranties to a reasonable period of time." *Id.*

In lieu of an answer, K&N moved to dismiss on several grounds, including lack of subject-matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. Mot. at 1–2 [ECF No. 16]. K&N requests that the Court dismiss the complaint in its entirety with prejudice, or alternatively that the Court "strike Plaintiffs' overbroad class allegations from the complaint." *Id.* at 2.

II

A

The first priority is subject-matter jurisdiction. *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 764 (8th Cir. 2001) ("It is axiomatic that a court may not proceed at all in a case unless it has jurisdiction."). "CAFA gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 552 (2014) (citing 28 U.S.C. § 1332(d)(2), (5)(B)). Here, the Parties do not disagree that they are minimally diverse or that the class contains at least 100 members. They disagree about whether the amount in controversy meets the $5 million threshold.

The task of determining whether a case meets CAFA's $5 million threshold is not intended to be difficult. "[T]he claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6). CAFA "tells the District Court to . . . add[] up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million." *Standard*

*Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013); *Faltermeier v. FCA US LLC*, 899 F.3d 617, 621 (8th Cir. 2018) ("[A] district court aggregates the claims of all named or unnamed persons who fall within the definition of the *proposed* or certified class.").[1]

"Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) (citation omitted). "A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'" *Id.* at 729 n.6 (citations omitted). "In a facial attack, the court merely needs to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015) (alteration, citation, and internal quotation marks omitted). "Conversely, in a factual attack, the existence of subject matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered." *Id.* at 914–15 (alteration, citation, and internal quotation marks omitted). K&N asserts a factual attack to the amount in controversy—it relies upon matters outside the complaint, including affidavit testimony and exhibits. Regardless, for reasons that will become evident, it makes better sense here first to consider only the allegations in Plaintiffs' complaint (as if K&N brought a facial attack).

Jurisdictional allegations, like any other allegations in the complaint, are subject to Rule 8(a)'s standard of "a short and plain statement of the grounds for the court's

---

[1]     K&N misapprehends this standard by calculating the amount in controversy based on only defective KN-204 filters during the recall period. *See* Mem. in Supp. at 12–13 [ECF No. 18]. The Plaintiffs' proposed class controls. *See* Mem. in Opp'n at 5, 21–24 [ECF No. 26].

jurisdiction." Fed. R. Civ. P. 8(a)(1); *see Dart*, 135 S. Ct. at 553. Though the Supreme Court and Eighth Circuit have yet to address the issue, several federal courts have held that the plausibility standard of *Twombly* and *Iqbal* applies equally to "statement[s] of the grounds for the court's jurisdiction" under Rule 8(a)(1) and to "statement[s] of the claim showing that the pleader is entitled to relief" under Rule 8(a)(2). As one court observed:

> [A]lthough the plausibility requirement is most commonly applied in the context of evaluating whether a complaint substantively states a claim for relief, there is little reason to suppose that it should not equally govern the evaluation of factual allegations that support federal subject matter jurisdiction, such as to evaluate facts alleged concerning an amount in controversy.

*Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155 (D. Conn. 2016). And as another district court has noted, "it would be highly incongruous to require separate pleading standards for two subsections of the same rule," especially because "the factual nature of the claims surrounding the grounds for jurisdiction are, more often than not, intertwined with the factual allegations showing that the pleader is entitled to relief." *Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 775 F. Supp. 2d 790, 799 (D. Md. 2011). Several other federal courts have reached this same conclusion. *See Storms v. Haugland Energy Grp., LLC*, No. 18-cv-80334-BLOOM-REINHART, 2018 WL 4347603, at *2–3 (S.D. Fla. Aug. 17, 2018) (collecting cases that have extended the plausibility standard to the Rule 8(a)(1) context). Precedent suggests the Supreme Court and Eighth Circuit would reach the same conclusion. *See Dart*, 135 S. Ct. at 553–54 (stating that a removing defendant's notice of removal must contain "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and noting that it is "anomalous to treat

commencing plaintiffs and removing defendants differently"); *Pudlowski v. The St. Louis Rams, LLC*, 829 F.3d 963, 964–65 (8th Cir. 2016) ("[J]urisdiction is . . . required to be alleged plausibly in a notice of removal.").[2]

Generally, "[w]hen a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Dart*, 135 S. Ct. at 553. And generally, this allegation is accepted when not contested by the defendant. *See id.*; *see, e.g.*, *Restrepo v. Best Buy Co.*, No. 14-cv-2603 (JNE/JSM), 2014 WL 4639890, at *2 (D. Minn. Sept. 16, 2014) ("A party invoking the jurisdiction of the court is entitled to rely on its jurisdictional averments."). But even absent a challenge from the other party, amount-in-controversy allegations may be "questioned by the court." *Dart*, 135 S. Ct. at 553. In order to pass muster under *Twombly* and *Iqbal*, the jurisdictional allegations must provide "more than labels and conclusions, and a formulaic recitation . . . will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). There is no requirement of "heightened fact pleading of specifics," but the complaint must contain "enough facts" to nudge the existence of jurisdiction "across the line from conceivable to plausible." *Id.* at 570. "'[N]aked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Instead, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference" that there is subject-matter jurisdiction. *Id.* at 678–79 (citation omitted) (describing this as a

---

[2] The Parties conceded at oral argument that facts bearing on jurisdiction under Rule 8(a)(1), just like facts bearing on whether the complaint states a claim under Rule 8(a)(2), are subject to the plausibility standard set forth in *Twombly* and *Iqbal*.

"context-specific task" that requires the court "to draw on its judicial experience and common sense").

Courts have dismissed complaints that do not plausibly allege the jurisdictional amount in controversy under CAFA. *See, e.g.*, *Weir v. Cenlar FSB*, No. 16-cv-8650 (CS), 2018 WL 3443173, at *12 (S.D.N.Y. July 17, 2018) (concluding that CAFA's "jurisdictional amount, like any other factual allegation," must be "supported by facts rendering it plausible"); *Miller v. CenturyLink, Inc.*, No. 17-cv-648-wmc, 2017 WL 3616888, at *2 (W.D. Wis. Aug. 23, 2017) (concluding that the plausibility standard extends to jurisdictional facts, so plaintiff's CAFA complaint must "provide sufficient allegations for the court to determine whether the amount in controversy is satisfied"). *But see, e.g.*, *Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593, 600 (W.D. Tenn. 2011) ("The plausibility standard does not apply to a [CAFA] plaintiff's allegations about the amount in controversy." (citation omitted)). Cases dismissing complaints for failure to plausibly allege the amount in controversy under 28 U.S.C. § 1332(a) also provide persuasive authority here to examine the allegations in Plaintiffs' complaint relevant to CAFA's $5 million threshold. *See, e.g.*, *Wood v. Maguire Auto., LLC*, 508 F. App'x 65 (2d Cir. 2013) (summary order) (affirming district court's dismissal for lack of subject-matter jurisdiction because plaintiff's "allegation in her complaint of $75,000 in controversy is conclusory and not entitled to a presumption of truth" under *Iqbal*); *Fleming v. Laasko*, No. 18-cv-1527(RA), 2019 WL 952349, at *2 (S.D.N.Y. Feb. 26, 2019) ("Plaintiff has not shown, or attempted to show, that the $75,000 minimum amount in controversy is met . . . . [and her] factual allegations do not create a reasonable

8

probability that the claim is in excess of the statutory jurisdictional amount."); *Lo v. AT&T Servs., Inc.*, No. 3:17-cv-00401(JCH), 2018 WL 587322, at *1, *4 (D. Conn. Jan. 29, 2018) (declining to reach the merits of motion to dismiss and concluding no subject-matter jurisdiction because complaint did not plausibly plead $75,000 in controversy); *Mallgren v. Microsoft Corp.*, 975 F. Supp. 2d 451, 456 (S.D.N.Y. 2013) ("As Mallgren fails to allege damages in excess of $75,000.00 to a 'reasonable probability,' the Court lacks subject matter jurisdiction."). Though $75,000 is a lot less than $5 million, the logic of these cases applies equally to both jurisdictional amounts.

## B

Here, Plaintiffs' complaint avers that "the amount in controversy for the Class exceeds $5,000,000, exclusive of interests and costs," Compl. ¶ 8, but that is a legal conclusion not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see, e.g.*, *Lo*, 2018 WL 587322, at *4 (D. Conn. Jan. 29, 2018) ("[Plaintiff's] boilerplate statement that the amount in controversy exceeds $75,000 is not entitled to the rebuttable presumption that this is a good faith representation of the actual amount in controversy."). Factual allegations bearing on jurisdiction must be considered to determine if CAFA jurisdiction is truly plausible. *Cf. Iqbal*, 556 U.S. at 681.

On a very basic level, the amount in controversy is calculated by multiplying the number of class members by the value of damages to each class member.[3]  More specifically, the equation in this case requires multiplying the number of affected oil filters by the value of damages to each filter owner.  *Cf.* Mem. in Supp. at 13 [ECF No. 18].  As for the first factor—the number of affected oil filters—the complaint states that the class consists of "current and former purchasers of engine oil filters," including "[a]ll persons or entities in the United States that purchased a KN138, KN204, and/or KN303" model filter. Compl. ¶¶ 1, 73.  The complaint also states that "Plaintiffs believe, and on that basis allege, that tens of thousands of Oil Filters have been sold in each of the States that are the subject of the Class."  *Id.* ¶ 76.  But the proposed class definition is not limited to a particular time period, so it is not possible to extrapolate from this figure how many filters might be at issue.  *See id.* ¶ 73.  The class size is not limited by a statute of limitations, as Plaintiffs allege that any applicable statutes have been tolled by "Defendant's knowing and active concealment" of the defect.  *Id.* ¶¶ 39–41.  The complaint does specifically allege that the recall, which spanned seven months, involved an estimated 186,000 filters, and that quantity provides some sense of the number of KN-204 filters sold per month (around 26,571) and per year (around 318,852).  *Id.* ¶ 63.  The complaint also suggests that the class

---

[3]     "Courts routinely rely on . . . basic multiplication to determine whether the aggregate claims of a putative class likely exceed CAFA's threshold."  *Cowit v. CitiMortgage, Inc.*, No. 1:12-cv-869, 2013 WL 142893, at *6 (S.D. Ohio Jan. 11, 2013) (citing *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 939 (8th Cir. 2012)).  Notably, though, at this posture the value of Plaintiffs' claims does not need to *likely* exceed CAFA's threshold.  That preponderance-of-the-evidence standard is reserved for factual challenges. Rather, the amount in controversy must *plausibly* exceed $5 million.

might span as far back as 2014, if not earlier. *See id.* ¶ 53 ("Defendant has long known, since at least 2014, that the Oil Filters are defective . . . ."). If that is the case, the class might include five years' worth of filters, or over 1.5 million. But the complaint elsewhere suggests that K&N modified the filter design in August 2017. *See id.* ¶¶ 63, 67. If Plaintiffs mean to allege that these modifications rendered subsequent filters non-defective, that may curtail the class period to three years or so. If that is the case, the class would include fewer than one million filters (around 956,556).

As for the second factor—the value of damages—the prayer for relief seeks "all actual, general, special, incidental, statutory, and consequential damages and restitution," as well as injunctive relief in the form of replacement of the filters and an extended warranty. *Id.* at 38. The complaint does not estimate or identify the cost of each filter or the diminution in value attributable to the defect. *See id.* ¶ 6 (alleging that "[h]ad Plaintiffs and other Class Members known of the defect within the Oil Filters at the time of purchase, they would not have purchased the Oil Filters, or would have paid substantially less for them"), ¶ 128 (same). The complaint does detail the damages each of the three named Plaintiffs experienced, but it does not provide any sense of the frequency of these types of damages. *See id.* ¶¶ 14 (estimating $300 cost to Penrod for an oil change and tire), 21 (alleging the defect caused Erpenbach to have to purchase cleaner, towels, and other maintenance items), 28 (alleging damages to Welsh for engine failure of "over $10,000"). And the complaint identifies statutory damages under Oregon's Unlawful Trade Practices Act of up to $200, but does not provide any sense of the number of oil filters sold in Oregon. *See id.* ¶ 140. The absence of allegations identifying a class period, the number of involved

oil filters, and a floor of damages sustained by each filter purchaser does not provide a plausible factual basis for Plaintiffs' allegation that the amount in controversy is greater than $5 million.

Other cases support this conclusion. For example, in *Miller v. CenturyLink, Inc.*, the district court held that the complaint "fail[ed] to provide sufficient allegations for the court to determine whether the amount in controversy is satisfied." 2017 WL 3616888, at *2. Plaintiff had alleged that the amount in controversy exceeded $5 million, that the number of class members was in the "thousands," and that each was billed small monthly amounts of $200 or less. *Id.* From those sparse allegations, the court said it was "hard-pressed to understand how the jurisdictional minimum [was] satisfied," and that "[a]t the very least, plaintiff has failed to plausibly allege the amount in controversy." *Id.* Similarly, Plaintiffs here "believe, and on that basis allege," that "tens of thousands" of filters have been sold, but this estimate is bereft of a time period (*e.g.*, per month, per year, or ever), which significantly diminishes its utility in assessing plausibility. *See* Compl. ¶ 76. And although Plaintiffs have provided varying estimates of the damages they each incurred, they have not alleged that these damages are typical for each class member. *Cf. id.* ¶ 78 (addressing Rule 23 typicality and stating only that "Plaintiffs and all members of the class sustained damages, including, but not limited to, ascertainable losses arising out of Defendant's wrongful conduct").

Similarly, in *Weir v. Cenlar FSB*, the court concluded that:

> Plaintiffs have not plausibly alleged that $5 million is in controversy. They allege that Defendants service approximately 2.3 million loans, and that at least thousands of

those loans are in default. If just three percent of those 2.3 million loans were in default, and the borrowers were charged property inspection fees of $16 only five times, the amount in controversy would exceed $5 million. But they have provided no information on what percentage of those borrowers are in New York and eligible to pursue the state-law claims alleged. Nor have they provided information on how many times or how frequently they or other class members were charged the challenged fees. So there are insufficient facts to render it plausible that the state law claims involve an amount in controversy exceeding $5 million. Accordingly, I believe the Court lacks subject-matter jurisdiction over those claims.

2018 WL 3443173, at *12 (footnotes omitted). Similarly, Plaintiffs' complaint requires synthesizing various allegations to presume a class period of something close to three years, guess at the number of filters sold during that time, and then, for lack of a better term, reverse engineer a damages floor of about $5.23 per plaintiff to push the amount in controversy above $5 million.[4] And even still, this reverse-engineered figure only accounts for the KN-204 filter, not the KN-138 or KN-303 filters, for which the complaint provides no information about the number of affected filters or price per filter.

It seems important to note here that Plaintiffs' decision to file in federal court was unquestionably rational based on the fact that K&N previously removed a similar class-action complaint from California state court to federal court on the basis that CAFA's jurisdictional requirements were satisfied. *See* ECF No. 27-1 (Notice of Removal in *O'Neill v. K&N Eng'g, Inc.*, No. 5:17-cv-02073-JFW-SP (C.D. Cal. Oct. 10, 2017), in

---

[4] To make the math clear, $5 million divided by the number of affected filters would equal the minimum price per filter required to reach CAFA's amount in controversy. Assuming 318,852 filters were sold each year over three years, there would be 956,556 affected filters. $5 million ÷ 956,556 filters = $5.23 per filter.

which K&N's notice of removal included similar jurisdictional allegations to those alleged here by Plaintiffs).  It seems equally important to observe that Plaintiffs' claims may very well exceed CAFA's $5 million threshold.  That said—and regardless of how the California case proceeded—it's just not plausible to reach that conclusion at this time in this case based on the allegations in Plaintiffs' complaint.

## C

Plaintiffs will be permitted an opportunity to file an amended complaint.  *See, e.g.*, *Miller*, 2017 WL 3616888, at *2 ("Before dismissing this action for lack of subject matter jurisdiction [under CAFA], plaintiff will be given leave to file within 14 days an amended complaint that establishes subject matter jurisdiction by alleging . . . the amount in controversy plausibly exceeds $5,000,000.")  Plainly, "judicial efficiency would be promoted by allowing leave to amend . . . rather than requiring [Plaintiffs] to commence a separate action."  *Lee v. Hennepin Cty.*, No. 13-cv-1328 (PJS/AJB), 2013 WL 6500159, at *4 (D. Minn. Dec. 11, 2013); *see also Chambers v. Travelers Cos., Inc.*, No. 08-cv-5947 (JMR/JJK), 2009 WL 873124, at *4 (D. Minn. 2009) ("[C]onsistent with the policy of this Circuit that leave to amend be freely given when justice so requires, this Court concludes that Plaintiff should be permitted an opportunity to amend . . . to plead . . . with the requisite specificity.").  Plaintiffs will be ordered to file any amended complaint within thirty days of the date of this order.  If no amended complaint is filed by that deadline, the case will be dismissed without prejudice for lack of subject-matter jurisdiction.  *See Cty. of Mille Lacs v. Benjamin*, 361 F.3d 460, 464–65 (8th Cir. 2004) (reversing district court's dismissal with prejudice for lack of subject-matter jurisdiction as "premature"); Proposed Order

[ECF No. 21] (seeking dismissal with prejudice). As a practical matter, this outcome has the effect of granting K&N's motion insofar as it sought dismissal of Plaintiffs' complaint for lack of subject-matter jurisdiction. K&N's motion will be denied in all other respects, but that denial will be without prejudice to any motions K&N may bring against any amended complaint Plaintiffs may file.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Dismiss [ECF No. 16] is **GRANTED IN PART** and **DENIED IN PART**.

    a. Insofar as Defendant's motion is based on a lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the motion is **GRANTED**.

    b. In all other respects, Defendant's motion is **DENIED** as **MOOT** without prejudice to any motions K&N may bring against any amended complaint Plaintiffs may file.

2. Within 30 days of the date of this Order, Plaintiffs may file an amended complaint that plausibly alleges CAFA jurisdiction. If Plaintiff does not file an amended complaint within that time, the case will be dismissed without prejudice for lack of subject-matter jurisdiction.


Dated: May 2, 2019                                      s/ Eric C. Tostrud
                                                        Eric C. Tostrud
                                                        United States District Court