UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| John Penrod, Gus Erpenbach, and Juan Welsh, *individually and on behalf of themselves and all others similarly situated*, | File No. 18-cv-02907 (ECT/LIB) |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| K&N Engineering, Inc., | |
| Defendant. | |

Matthew D. Schelkopf and Joseph B. Kenney, Sauder Schelkopf LLC, Berwyn, PA; Daniel E. Gustafson, Daniel C. Hedlund, Catherine Sung-Yun K. Smith, and Ling S. Wang, Gustafson Gluek PLLC, Minneapolis, MN; and David C. Wright, McCune Wright Arevalo LLP, Ontario, CA, for Plaintiffs John Penrod, Gus Erpenbach, and Juan Welsh.

Mark C. Goodman and Anne Kelts Assayag, Baker McKenzie, LLP, San Francisco, CA; Amanda M. Cialkowski and Leah N. Kippola-Friske, Nilan Johnson Lewis PA, Minneapolis, MN, for Defendant K&N Engineering, Inc.

Plaintiffs filed this case in federal district court seeking to represent a nationwide class—or, alternatively, three state-specific classes—of "persons or entities that purchased" Defendant K&N Engineering's allegedly defective oil filters. Plaintiffs assert only state-law claims and allege there is subject-matter jurisdiction over this case under the Class Action Fairness Act ("CAFA"). Plaintiffs' original complaint was dismissed because it did not allege facts plausibly establishing CAFA's jurisdictional requirement that "the matter in controversy exceed[] the sum or value of $5 [million], exclusive of interest and

costs." 28 U.S.C. § 1332(d)(6); *Penrod v. K&N Engineering, Inc.*, No. 18-cv-2907 (ECT/LIB), 2019 WL 1958652 (D. Minn. May 2, 2019) (*Penrod I*). Plaintiffs have since filed an amended complaint attempting to address this deficiency. K&N moves to dismiss the amended complaint on several grounds, including that the amended complaint, like Plaintiffs' original complaint, does not plausibly show that Plaintiffs' claims meet CAFA's greater-than $5 million jurisdictional threshold. K&N's motion will be granted on this basis. Eighth Circuit precedents say that (1) absent class members must have Article III standing, and (2) in claims alleging defective products, plaintiffs lack standing if they do not allege that the product they purchased manifested the defect. Here, Plaintiffs' allegations aimed at establishing CAFA's $5 million floor are insufficient because they depend on the inclusion of absent class members who lack standing, and they do not plausibly show that the claims of class members who have standing satisfy CAFA's jurisdictional requirements.

I

The substance of the claims Plaintiffs alleged in their original complaint has not changed in their amended complaint. To summarize, Plaintiffs allege that K&N "designed, manufactured, marketed, and sold" defective engine-oil filters for use in motorcycles and powersport vehicles (like jet skis and ATVs). Am. Compl. ¶ 1 [ECF No. 38]. Plaintiffs allege that three models of K&N filters—the KN-138, KN-204, and KN-303—share "a structural and manufacturing defect whereby they can suddenly separate or fracture causing pressurized and hot engine oil to erupt and spill onto the person, engine, components, tires, and riding surfaces." *Id.* ¶¶ 2–3. The three named Plaintiffs are from different states: John

Penrod is a Minnesota citizen; Gus Erpenbach is a Missouri citizen; and Juan Welsh is an Oregon citizen. *Id.* ¶¶ 11 (Penrod), 18 (Erpenbach), 26 (Welsh). Plaintiffs allege similar experiences with the KN-204 filter. Each describes purchasing a KN-204 filter and either having it installed by a third party or installing it himself on his motorcycle. *Id.* ¶¶ 12 (Penrod), 19 (Erpenbach), 27 (Welsh). Each then describes experiencing the filter's failure while operating his motorcycle and the damages he sustained because of the failure. *Id.* ¶¶ 13–14 (Penrod), 20–21 (Erpenbach), 28 (Welsh). Plaintiffs allege that others experienced similar failures of the three K&N filter models included in Plaintiffs' claims, *id.* ¶¶ 54–59, and that K&N "has long known, since at least 2014, that the [three filters that are the subject of Plaintiffs' claims] are defective," *id.* ¶ 53. Plaintiffs allege that K&N recalled 186,000 KN-204 filters manufactured between March 1, 2016 and September 30, 2016. *Id.* ¶¶ 63, 67–71. As in their original complaint, Plaintiffs assert claims in their amended complaint for negligence, *id.* ¶¶ 109–116, strict liability for a product defect and failure to warn, *id.* ¶¶ 117–130, breach of express warranty, *id.* ¶¶ 179–185, breach of implied warranty, *id.* ¶¶ 186–191, and violations of various state consumer-protection statutes, *id.* ¶¶ 131–178. Plaintiffs seek to represent a nationwide class of "[a]ll persons or entities in the United States that purchased a KN-138, KN-204, and/or KN-303 filter." *Id.* ¶ 100. Alternatively, Plaintiffs seek to represent subclasses of Minnesota, Missouri, and Oregon purchasers of the three filters. *Id.* ¶ 101. Plaintiffs' claims under the state consumer-protection statutes would be asserted on behalf of the appropriate state-specific named plaintiff and subclass only. *Id.* ¶¶ 132, 144 (Minnesota); 152 (Missouri); 161, 173 (Oregon).

As noted, Plaintiffs' original complaint was dismissed because it did not include allegations plausibly establishing CAFA's greater-than-$5 million jurisdictional threshold. *Penrod I*, 2019 WL 1958652, at *2–6. CAFA "tells the District Court to . . . add[] up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). Plaintiffs' original complaint did not identify the number of class members. Instead, it estimated the number of filters K&N sold during certain times relevant to the class. These allegations provided no plausible basis for reasonably estimating the number of filters that might be implicated by the proposed class. *Penrod I*, 2019 WL 1958652, at *4. The original complaint also provided no estimate or measure of value of each class member's claim. *Id.* at *5. For these reasons, Plaintiffs' original complaint "[did] not provide a plausible factual basis for Plaintiffs' allegation that the amount in controversy is greater than $5 million." *Id.*

II

Plaintiffs have added allegations to their amended complaint intended to address these deficiencies. The amended complaint continues not to include an allegation identifying the number of class members, but it does incorporate additional allegations regarding the number of oil filters implicated by the proposed nationwide class. Plaintiffs allege that K&N has sold all three "oil filter models continuously from before 2014 through the present." Am. Compl. ¶ 75. Plaintiffs allege that K&N "has sold approximately 220,000 KN-204 oil filters annually in the United States over the past 5 years at a retail price of $15.99[,]" and that K&N "ha[s] sold approximately 1,100,000 KN-204 oil filters

4

during the relevant class period of 2014 to the present, at a retail value of $17,589,000."
*Id.* ¶ 76. Citing the absence of "publicly available sales data regarding the KN-138 and KN-303 oil filters," *id.* ¶ 79, Plaintiffs estimate sales of these two filters by comparing their interchangeability (that is, the number of vehicles on which these two filters may be installed) with that of the KN-204, *id.* ¶¶ 80–88. From these comparisons, Plaintiffs allege "on information and belief that [K&N] sold more than 500,000 combined units of the KN-138, KN-204, and KN-303 oil filters annually during the class period." *Id.* ¶ 89. Plaintiffs allege that the "retail value of these units" is at least greater than $21 million. *Id.*

Plaintiffs acknowledge at least tacitly that the value of each class member's claim depends on facts unique to that class member. For those class members whose experiences are like Plaintiffs'—*i.e.*, who experienced the failure of an oil filter while operating their motorcycle or other vehicle—the value of those class members' claims could include things like a new engine, *see id.* ¶ 28, perhaps other parts and supplies, *see id.* ¶¶ 14, 21, and perhaps towing charges and service or labor charges, *see id.* ¶ 28. Plaintiffs do not allege how many class members suffered these losses or the value of such claims, and this is understandable. This kind of information usually is obtained later, perhaps through class notice, discovery, or claims processing procedures. For other class members, Plaintiffs seem to allege that a filter's retail price is an appropriate measure of the value of a claim. They allege that class members, had they known of the filters' defects, would not have purchased any of the three filters and that "it is far more than merely plausible that CAFA's $5 million jurisdictional threshold has been met based on point-of-purchase damages" alone. *Id.* ¶¶ 91, 92; *see also id* ¶ 5 (alleging that Plaintiffs and class members suffered the

"loss in value [of] the Oil Filters themselves"); ¶ 6 (alleging that if Plaintiffs and class members knew of the asserted defect, "they would not have purchased the Oil Filters, or would have paid substantially less for them"); ¶ 94 (alleging that, had they known of the defect, Plaintiffs and class members would not have purchased the filters even if they had been offered a significant price discount of 37%).

To summarize then, Plaintiffs' theory of subject-matter jurisdiction under CAFA hangs on two sets of allegations. With the first, Plaintiffs allege facts plausibly showing that K&N sold during the class period an aggregate number of the three filters at issue in this case that is great enough—as many as 2.5 million—to, in turn, suggest plausibly that there are more than 100 members of the proposed class. Plaintiffs' allegation that K&N sold as many as 2.5 million filters is drawn rationally from reasonable sources, and its assertion that these 2.5 million filters were purchased by more than 100 "persons or entities in the United States," Am. Compl. ¶¶ 8, 100, is a realistic inference. Plaintiffs allege next that, multiplying 2.5 million filters by their price of $15.99, "point-of-purchase damages alone" exceed CAFA's $5 million jurisdictional threshold. *Id.* ¶ 92. By "point-of-purchase damages," Plaintiffs are understood to say that a purchaser and would-be class member incurred damages merely by purchasing one of the three K&N filters at issue here. This allegation creates the jurisdictional problem.

III

The law is clear in the Eighth Circuit that a federal court lacks subject-matter jurisdiction over absent class members' defective-product claims if there is no allegation

6

that the product manifested the defect.[1] The standing doctrine "serves to identify those disputes which are appropriately resolved through the judicial process"—in other words, those disputes that qualify as "Cases" or "Controversies" under Article III. *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990). A plaintiff meets "the irreducible constitutional minimum of standing" when (1) he has suffered an "injury in fact," (2) there is "a causal connection between the injury and the conduct complained of" that is "fairly traceable to the challenged action of the defendant," and (3) it is "likely . . . that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). The Supreme Court has instructed that "[i]n an era of frequent litigation [and] class actions . . . courts must be more careful to insist on the formal rules of standing, not less so." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 146 (2011). Our Eighth Circuit Court of Appeals has recognized that "[t]he constitutional requirement of standing is equally applicable to class actions" and has held that "a class cannot be certified if it contains members who lack standing." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010). "Or, to put it another way, a named plaintiff cannot represent a class of persons who lack the ability to bring a suit themselves." *Id.* "If

---

[1] "A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'" *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted). "In a facial attack, the court merely needs to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015) (alteration, citation, and internal quotation marks omitted). "Conversely, in a factual attack, the existence of subject matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered." *Id.* at 914–15 (alteration, citation, and internal quotation marks omitted). Here, Plaintiffs' claims are evaluated facially.

7

members 'who lack the ability to bring a suit themselves' are included in a class, the court lacks jurisdiction over their claims . . . ." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011) (quoting *Avritt*, 615 F.3d at 1034). Purchasers of an allegedly defective product lack an Article III injury and standing if the product has not "actually exhibited the alleged defect." *Zurn*, 644 F.3d at 616 (quoting *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009)); *see also Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (same).

Here, contrary to these authorities, Plaintiffs' assertion that this case satisfies CAFA's greater-than $5 million jurisdictional threshold depends on counting the claims of class members who lack standing. Penrod, Erpenbach, and Welsh obviously suffered an injury. The KN-204 filters each of them purchased failed and caused varying degrees of injury. Am Compl. ¶¶ 11–31. But Plaintiffs do not—and could not reasonably—allege that their injuries approach satisfying CAFA's greater-than $5 million floor.[2] Instead, as explained earlier, Plaintiffs seek to meet this requirement by alleging that absent class members' "point-of-purchase damages" are far greater than $5 million. *Id.* ¶ 92. Plaintiffs do not allege that point-of-purchase damages involved any manifestation of a defect. Plaintiffs allege instead that purchase alone makes one a class member. This comes through most clearly in Plaintiffs' class definition. It ties class membership to mere

---

[2] This is not to suggest that Plaintiffs' damages are not significant. For example, in Welsh's case, the interruption of a long road trip in a remote part of the country, the transport of his broken-down motorcycle, and replacing its $10,000 engine all involved significant hardship and costs. *Id.* ¶ 28. It is just to say that aggregating these damages with Penrod and Erpenbach's does not come near $5 million.

"purchase[]" of one of the three K&N filters; it contains no injury or defect-manifestation requirement. *Id.* ¶ 100. This also comes through in Plaintiffs' several allegations describing absent class members' injury as a "loss in value of the Oil Filters themselves" due to the defect. *Id.* ¶¶ 5, 6, 94. Plaintiffs do not allege a loss in value resulted from the defect's manifestation, but rather from its potential to manifest. *See, e.g.*, *id.* ¶ 94 (alleging that "Plaintiffs would not have *accepted the risk of sudden failure* of the oil filter" had they known of the alleged defect) (emphasis added). In their opposition brief, Plaintiffs argue that "[h]ere, as in *Zurn*, Plaintiffs allege that all oil filters within the defined class possess the defect, regardless of whether it ultimately results in a catastrophic failure of the filter." Opp'n Mem. at 14 [ECF No. 55]. In *Zurn*, the plaintiffs, homeowners who purchased brass plumbing fittings, alleged not merely that the fittings risked manifesting a defect but that the defect "afflict[ed] all of the fittings upon use." *Zurn*, 644 F.3d at 617. No similar allegation is made here. Plaintiffs do not allege, for example, that the oil filters began to leak or crack upon installation or that they manifested any other like characteristic of the asserted defect on first use. As Plaintiffs go on to explain in their brief, their complaint is that "the oil filters are manufactured in such a way as to make [them] *prone* to fail, separate, and leak oil" and that this "is the subject of this lawsuit and Plaintiffs' claims for damages; not just the units that actually failed." Opp'n Mem. at 14 (emphasis added). Saying that a product is "prone" to fail seems the same thing as saying it may but hasn't yet, and the Eighth Circuit has made clear that allegations plausibly suggesting a product is prone to fail alone do not show Article III injury. Plaintiffs' claims even more clearly violate the

Eighth Circuit's rule when Plaintiffs concede that their proposed class includes "not just the units that actually failed." *Id.*

Because the value of mere purchases of the KN-138, KN-204, and KN-303 filters cannot be aggregated to determine CAFA jurisdiction, Plaintiffs must allege facts plausibly showing that their damages, aggregated with those of absent class members whose filters also manifested a defect, are greater than $5 million. The amended complaint includes one set of allegations directed to this end:

> Plaintiffs further allege that Class Members for whom the defect in the subject Oil Filters manifested by failing, have suffered actual, special, and consequential damages as a result of the failure of the subject Oil Filters. Based on information and belief, Plaintiffs allege that even if the failure of 3/100ths of 1% of the low end estimate of the number of subject Oil Filters sold during the class period resulted in engine seizure and over $10,000 in actual damages, as it did for Plaintiff Welsh, the actual special damages to these Class Members alone would exceed $5 million.

Am. Compl. ¶ 98. The low-end estimate of the number of subject oil filters sold during the class period is 1,875,000. Am. Compl. ¶ 89. "3/100ths of 1%" of 1,875,000 is 562.5. Therefore, to be precise, Plaintiffs are understood to assert that, if 562.5 oil filters failed and caused the same damages suffered by Welsh, the total damages would exceed $5 million (562.5 x $10,000 = $5,625,000).

These allegations do not plausibly meet CAFA's greater-than $5 million threshold. "Time and again the Supreme Court has reminded lower courts that speculation and conjecture are not injuries cognizable under Article III." *ConAgra Foods*, 747 F.3d at 1031. But the allegations in paragraph 98 seem to be both speculative and conjectural. No

10

facts are alleged to support the "3/100ths of 1%" failure rate. If that failure rate were plausible, no facts are pleaded to plausibly suggest that "engine seizure and over $10,000 damages" would result in every one of these instances, or perhaps represent a plausible average of the resulting damages. It is true that Welsh claims to have suffered damages in about that amount. But, at least under the circumstances of this case, it is speculative to allege, based just on Welsh's experience, that every class member who might have experienced the same kind of on-the-road failure would have suffered damages in the same amount. Though pleading on "information and belief" may be appropriate in some situations, it's not accurate to say that is what Plaintiffs are doing with these allegations. It is more accurate to say that these allegations are the product of jurisdictional reverse engineering: start with CAFA's $5 million floor and identify the math that gets you there—here, a seemingly small failure rate coupled with a $10,000 per-failure damages amount. Perhaps that approach might work in some cases. It doesn't here because the alleged failure rate and per-failure damages amount are not tethered to any plausible factual basis.

Plaintiffs will not be given a second opportunity to amend their complaint. That opportunity was not requested. Also, it is difficult to imagine how Plaintiffs' CAFA-jurisdiction allegations might be amended to plausibly plead jurisdiction. The amended complaint makes clear that Plaintiffs are set on including in the class purchasers whose filters never manifested a defect, and that the inclusion of those purchasers is essential to establishing subject-matter jurisdiction under CAFA. Plaintiffs have not suggested they might be able to include in a second amended complaint allegations plausibly showing that the value of the claims of purchasers whose filters manifested a defect exceeds $5 million.

11

# ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendant K&N Engineering, Inc.'s Motion to Dismiss [ECF No. 42] is **GRANTED** for lack of subject-matter jurisdiction;

2. Defendant K&N Engineering, Inc.'s Motion to Strike [ECF No. 48] is **DENIED AS MOOT**;

3. Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 17, 2020         s/ Eric C. Tostrud
                                Eric C. Tostrud
                                United States District Court